(Nos. 65736, 65783 cons.—

JANET D. VAUGHN *et al.*, Appellees and Appellants, v.
ADELINE SPEAKER *et al.*, Appellants and Appellees.

*Opinion filed December 21, 1988.—Rehearing denied
January 30, 1989.*

152

154

RYAN, J., joined by MILLER, J., specially concurring.

Bozeman, Neighbour, Patton & Noe, of Moline (Robert J. Noe and John W. Robertson, of counsel), for appellants and appellees Speaker *et al.*

Bernard P. Reese, Jr., and William E. Gottfred, of Reese & Reese, of Rockford, for appellees and appellants Vaughn *et al.*

Martin J. Healy, Jr., and Clare M. Devereux, of Martin J. Healy, Jr., & Associates, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE CUNNINGHAM delivered the opinion of the court:

In the circuit court of Whiteside County, on November 27, 1985, Janet D. Vaughn and Richard L. Vaughn filed a complaint against Wilbur P. Speaker, alleging that on December 2, 1983, Speaker negligently caused an automobile accident in which Janet D. Vaughn was injured, and requesting that the cause be tried by a jury. Wilbur P. Speaker had died on January 16, 1985, although plaintiffs were unaware of this fact when they filed the initial complaint. Plaintiffs first learned of the death on December 5, 1985, when the summons was returned to plain-

tiffs' attorneys without having been served on anyone; the returned summons indicated that Wilbur P. Speaker was deceased. Plaintiffs then, on December 23, 1985, filed a motion to correct misnomer, which was granted. On that same date, plaintiffs filed a complaint making the same allegations as in the initial complaint but naming as defendants "Adeline Speaker and Janet E. Prescott, as Co-Executors of the Estate of Wilbur P. Speaker." A summons was served on December 31, 1985. Defendants moved to dismiss, asserting that the applicable statute of limitations barred the action.

Plaintiffs filed a memorandum in opposition to the motion to dismiss, asserting upon various theories that, for statute of limitations purposes, the second complaint related back to the initial filing. Plaintiffs also asserted in their memorandum that defendants were estopped from asserting the statute of limitations as a defense. Plaintiffs contended (with a supporting affidavit) that the totality of various acts and omissions by the insurance adjuster induced them to believe both that Wilbur Speaker was still living and that the statute of limitations would not be asserted. Specifically, plaintiffs contended that the insurance adjuster conceded liability and made a settlement offer prior to Wilbur Speaker's death. Negotiations continued after the death and allegedly even after the date on which the initial complaint was filed. According to plaintiffs, neither defendants themselves nor the insurance adjuster informed them of the death. Plaintiffs' arguments were rejected and the complaint was dismissed.

The appellate court found that the action was not timely. (156 Ill. App. 3d 962.) Relying on *Bavel v. Cavaness* (1973), 12 Ill. App. 3d 633, the appellate court found that the initial action, filed against decedent, was a nullity and could not be amended. The appellate court further found that therefore the second complaint did

not relate back to the date of the initial filing and was barred by the applicable statute of limitations. The appellate court also found, however, that an issue of fact existed as to whether defendants were estopped to assert the statute of limitations. The appellate court indicated that evidence suggested the possibility that defendants' insurance company may have lulled plaintiffs into a false sense of security, thereby causing them to delay the assertion of their rights.

Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted plaintiffs' petition for leave to appeal regarding whether their complaint was timely filed, and we also granted defendants' petition for leave to appeal regarding whether the evidence raised the possibility that defendants are estopped to assert the statute of limitations.

We first address the issue of whether the complaint against the co-executors was timely filed. In order for us to find that the second complaint was timely filed, we must find that it related back to the date on which the first complaint was filed. The statute of limitations generally governing actions for personal injuries, set forth in section 13—202 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 13—202), is two years, and the second complaint was filed over two years from the date of the injury. Moreover, even assuming, *arguendo*, that section 13—209 of the Code is otherwise applicable, it is of no benefit to plaintiffs. Section 13—209 provides in part:

> "If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred, an action may be commenced against his or her executors or administrators after the expiration of the time limited for the commencement of the action, *and within 6 months after the issuing of letters*

*of office.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 13—209.)

With respect to decedent's estate, letters testamentary were issued on February 13, 1985, more than *10 months* before the action was filed naming the co-executors as defendants. Thus, even if section 13—209 were otherwise applicable, it would be of no assistance to plaintiffs here.

We also note that section 18—12 of the Probate Act of 1975 (Ill. Rev. Stat. 1987, ch. 110½, par. 18—12), relied on by plaintiffs, is no basis for asserting that the second complaint was filed prior to the running of the statute of limitations. The language of section 18—12 (entitled "Limitations on payment of claims") clearly does not *extend* any otherwise applicable statute of limitations but instead imposes *additional* time constraints for making certain claims against a decedent's estate.

We must therefore determine whether the second complaint relates back (for statute of limitations purposes) to the initial complaint which named as defendant a deceased individual. For us to simply label the initial suit a "nullity" (see *Wells v. Lueber* (1976), 43 Ill. App. 3d 973; *Reed v. Long* (1970), 122 Ill. App. 2d 295) would be to answer this question in the negative without explanation. We must instead first examine certain Code provisions relied on by plaintiffs in the appellate court (provisions involving the relationship between the amendment of pleadings and the running of a statute of limitations) and determine whether any of those provisions apply.

The provisions upon which plaintiffs relied (in the alternative) during appeal from the circuit court include sections 2—1008(b), 2—616 and 2—401 of the Code (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1008(b), 2—616, 2—401). We recognize that, as stated in section 1—106 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 1—106),

these and other Code provisions are to be liberally construed. Even under a most liberal construction, however, none of these three provisions (sections 2—1008(b), 2—616 and 2—401) is of avail to plaintiffs.

Section 2—1008(b) provides in part that "[i]f a party to an action dies and the action is one which survives, the proper party or parties may be substituted by order of court." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1008(b).) A plain reading of this provision indicates that the General Assembly was referring to situations in which a living being who is already a party to a pending action passes away; the provision was not meant to encompass a situation such as that which is now before this court.

Section 2—401 addresses situations involving a misnomer. That section provides in part that a misnomer of a party "is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." (Ill. Rev. Stat. 1987, ch. 110, par. 2—401(b).) This provision does not encompass naming the wrong party but instead encompasses naming the right party by the wrong name. (*Cigan v. St. Regis House Hotel* (1979), 72 Ill. App. 3d 884.) The determination of whether the correction of a particular error in naming a party is merely a correction of a misnomer, or is instead an actual change of parties, should be made based upon conclusions about the intention and understanding of the parties. See *Cigan*, 72 Ill. App. 3d at 887.

We cannot conclude that changing the name of the defendant from decedent to his executors is simply the correction of a misnomer. This is not a situation where, for example, a plaintiff merely misspelled a defendant's surname or used an incorrect common name. Instead, plaintiffs here intentionally sued Wilbur P. Speaker when they should have sued his estate. Certainly decedent's estate is the legal successor to certain rights and liabili-

ties of the decedent, but an individual and his estate cannot exist contemporaneously and are wholly distinct legal entities. Accordingly, substitution of the estate for the decedent was not merely the correction of a misnomer, and section 2—401 cannot be invoked for relation back of the second complaint to the date of the original filing.

We next turn to a consideration of the applicability of section 2—616(d) of the Civil Code, which states in part:

> "A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of summons was in fact had upon the person, his or her agent or partner, as the nature of the defendant made appropriate, even though he or she was served in the wrong capacity or as agent of another, or upon a trustee who has title to but no power of management or control over real property constituting a trust of which the person is a beneficiary; (4) the person, within the time that the action might have been brought or the right asserted against him or her, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him or her; and (5) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading ***." (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(d).)

The appellate court found this provision inapplicable because "[i]n order for section 2—616 to apply there must also be an action pending against a person not originally named a defendant" (156 Ill. App. 3d at 965), and, in the appellate court's view, the complaint filed against the de-

cedent was a nullity and thus did not give rise to a pending action. Regardless of whether an action against a decedent is under all circumstances a nullity, section 2—616(d) provides no relief to plaintiffs because the fourth requirement of that provision was not met: there is no indication or assertion that either co-executor knew prior to the running of the statute of limitations that a complaint had been filed.

We point out that Federal and other State courts which have permitted substitution of an executor or administrator as defendant in an action initiated against a decedent have typically relied upon a provision which, like section 2—616(d), required that the substituted defendant receive notice of the pending action prior to the lapse of the limitations period. (See Fed. R. Civ. P. 15(c); *Loudenslager v. Teeple* (3d Cir. 1972), 466 F.2d 249; *Baker v. McKnight* (1983), 4 Ohio St. 3d 125, 447 N.E.2d 104; *Eberbach v. McNabney* (Ind. App. 1981), 421 N.E.2d 651.) Where the prospective defendant did not receive proper notice, courts have typically found that the complaint did not relate back to the date of the original filing. See, *e.g., Sassi v. Breier* (7th Cir. 1978), 584 F.2d 234.

We note also that section 2—616(b) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(b)) (dealing with amended pleadings raising claims growing out of the same transaction or occurrence as involved in an original claim) has occasionally been invoked by our appellate court to permit changing the capacity of a party plaintiff after a statute of limitations has elapsed. (See, *e.g., Pavlov v. Konwall* (1983), 113 Ill. App. 3d 576; *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669.) While we express no opinion whether section 2—616(b) was properly applied in those cases, we do conclude that the provision was not intended to govern amending pleadings to substitute defendants. Section 2—

616(b) clearly addresses situations in which a plaintiff seeks to add or amend claims against defendants already parties to the action, whereas section 2—616(d) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(d)) addresses situations in which a plaintiff seeks to substitute or add distinct defendants.

Plaintiffs have thus not pointed out, and we have not found, any Code provision by which the second complaint can be said to relate back to the date of the initial filing. Nor may we formulate such a rule under our inherent and statutory authority to formulate rules of procedure. (See Ill. Rev. Stat. 1987, ch. 110, par. 1—104.) It is true, as plaintiffs submit, that rules regarding amendments to pleadings are procedural in nature, as is a statute of limitations itself. But even though procedural in nature, a statute of limitations, if properly asserted by one entitled to its protection, is a bar to an action. It is a legislatively determined deadline for commencing an action against one who otherwise might be legally indebted to a plaintiff. This court may not, under the guise of procedural rulemaking, effectively eviscerate a valid statute of limitations.

We next turn to the question whether defendants, co-executors of the estate, are estopped from asserting the statute of limitations as a defense. In this regard we must point out that "equitable estoppel" and "waiver" are two distinct concepts, though they have similarities and are sometimes used interchangeably. A waiver is a voluntary relinquishment of a known right, claim or privilege (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365), whereas an equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish any existing right. Moreover, prejudice to the other party is one of the essential elements of an equitable estoppel, whereas a waiver does not necessarily imply that the party asserting it has been misled

to his detriment. (See generally 28 Am. Jur. 2d *Estoppel & Waiver* §30 (1966).) In the instant case, there is an assertion not that defendants intentionally relinquished a right to assert a limitations defense, but only that their conduct so misled plaintiffs that defendants are estopped from asserting the defense.

In *Lowenberg v. Booth* (1928), 330 Ill. 548, 555-56, this court set forth six elements of equitable estoppel, elements which we herein discuss. First, there must be words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts. Second, the party against whom the estoppel is alleged must have had knowledge at the time the representations were made that the representations were untrue. This knowledge need not be actual but may be implied; misrepresentations made with gross negligence can form a basis for equitable estoppel. (*Wright v. Stice* (1898), 173 Ill. 571.) Third, the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time that the representations were made and at the time that they were acted on by him. Fourth, the party estopped must intend or reasonably expect that his conduct or representations will be acted upon by the party asserting the estoppel or the public generally; the conduct and representations must be such as would ordinarily lead to the results complained of. (*Hefner v. Vandolah* (1871), 57 Ill. 520; see generally 28 Am. Jur. 2d *Estoppel & Waiver* §41 (1966).) Fifth, the party claiming the benefit of the estoppel must have in good faith relied upon the misrepresentation to his detriment. It has been said that this reliance must be reasonable, and that a party claiming estoppel cannot have acted improvidently. (See generally 18 Ill. L. & Prac. *Estoppel* §22 (1956).) While this is true as a general rule, it is also true that if the party alleged to be estopped is guilty of actual inten-

tional deceit and he reasonably expected his deceptive statements or conduct to be relied upon, he is in no position to contend that the party acting upon his deception was negligent in doing so. This is consistent with the principle that one guilty of fraudulent misrepresentation cannot assert that the person defrauded was negligent in failing to discover the truth. (See *Schmidt v. Lanfield* (1960), 20 Ill. 2d 89; *Stephens v. Clark* (1922), 305 Ill. 408.) The sixth requirement is that the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof.

Having set forth the elements of equitable estoppel, we examine the facts which plaintiffs assert give rise to estoppel in this particular case. Although we need not determine whether, had the insurance company been timely *notified* of Speaker's death, it would have had a duty to so inform plaintiffs, we decline to impose any affirmative duty on an insurance company to *monitor* the status of its insured and notify claimants of the insured's death. Nor did the appellate court invoke any such affirmative duty in finding an arguable basis for estoppel. Rather, the appellate court instead noted various activities of defendants which lulled plaintiffs into delaying suit, mistakenly believing that their claim would be settled on agreeable terms. We, too, address this basis for estoppel.

Conduct sufficient to create a reasonable belief in the plaintiffs that a claim will be settled may consist of numerous factors, including concession of liability by the insurer (*Wells v. Lueber* (1970), 43 Ill. App. 3d 973; *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304), and payments by the insurer during the period of negotiation (*Flagler v. Wessman* (1970), 130 Ill. App. 2d 491). We point out that in considering these factors, conduct oc-

curring prior to Wilbur Speaker's death may be as relevant as conduct occurring after his death. As stated in Illinois Law & Practice *Estoppel* §22, at 83 (1956), "an estoppel extends to and binds not only the person originally estopped, but also those who are in privity of blood, privity of estate, and privity of law."

The facts related to this basis for estoppel include allegations that the insurer conceded liability, paid the property damage claim, offered $15,000 to settle the personal injury claim (which offer was apparently never withdrawn), and engaged in extensive negotiations regarding the extent of personal injuries. Considering the totality of the alleged representations and conduct of the insurance company and the estate, we believe there is a question for the trier of fact as to whether this conduct lulled plaintiffs into delaying the filing of their suit and whether, if defendant's conduct in this regard was unintentional, plaintiffs' reliance in delaying suit was reasonable.

In addressing this factual basis for estoppel, we find it helpful to focus in particular on one of the elements of equitable estoppel: *detrimental* reliance. Defendants submit that a reliance on their alleged misrepresentations regarding an intent to pay the claim, even if otherwise legally sufficient, is insufficient here as a matter of law because that reliance was not detrimental. Defendants submit that the detriment (expiration of the limitations period) did not arise from plaintiffs' reliance on defendants' intent to pay the claim, no matter how reasonable that reliance may have been. Defendants point out that the initial complaint (naming the decedent as defendant) was filed *before* the limitations period elapsed. Defendants reason that the detriment was therefore due not to a delay in filing suit, but to a failure to ascertain before filing suit that defendant had died. The counterargument is, of course, that if defendants had not lulled plaintiffs

into delaying suit, plaintiffs would have learned of the death with sufficient time to file a second complaint before the limitations period elapsed.

The trier of fact will have to determine whether it was plaintiffs' reliance on defendants' apparent intent to pay the claim which was detrimental, or whether instead some other act, representation or omission, such as defendants' failure to disclose or plaintiffs' failure to independently learn of the death, was detrimental. We do not rule on this question as a matter of law. We do, however, wish to articulate a standard for answering this question. The standard which we adopt for determining whether reliance was detrimental is whether the reliance played a substantial part, and so was a substantial factor, in influencing the decision (in this case, the decision to file a complaint naming decedent, shortly before the limitations period elapsed). This is the standard set forth in Restatement (Second) of Torts §546, Comment *b*, (1977), regarding actions for fraud. See also *E/M Lubricants, Inc. v. Microfral, S.A.R.L.* (1981), 91 F.R.D. 235 (invoking this standard when applying Illinois law).

We point out that when arguing that plaintiffs' reliance (if any) on defendants' conduct played no substantial role in bringing about plaintiffs' predicament, defendants cannot contend (as they have in this court) that as a matter of law the public filing of the death certificate immediately put plaintiffs on notice of the death. For this argument defendants have relied on *Lowenberg v. Booth* (1928), 330 Ill. 548. In *Lowenberg*, this court reasoned that public records disclosed the ownership of certain realty and that the party asserting estoppel should reasonably have checked those records.

*Lowenberg* is distinguishable on several grounds. One basis for distinguishing *Lowenberg* is that it involved land records. The failure to check land records (involved in *Lowenberg*) cannot be equated to this situation, for

numerous reasons. First, a person interested in searching land records generally knows exactly with whom to check: the recorder of deeds of the county of the realty's *situs*. By contrast, a person seeking to determine whether a person has died has no way of knowing with certainty in what county a death certificate might be recorded, or how promptly after the death the certificate would be recorded. Moreover, depending upon a wide variety of circumstances, such as a person's age and health, the likelihood of his having recently died may be very remote. We must leave it to the trier of fact to decide whether reasonable prudence dictated an attempted verification that Speaker was alive.

*Lowenberg* is also distinguishable because the conduct allegedly creating estoppel there was failure to disclose information which could have been ascertained from public records. By contrast, in this case the conduct upon which we have focused is not defendants' failure to disclose information in public records (*i.e.*, Speaker's death) but rather conduct allegedly lulling plaintiffs into delaying their initial filing of suit. If the reasonableness of reliance is *directly* put in issue here (as it will be if defendants' conduct is grossly negligent rather than intentional), it will be the reasonableness of relying on defendants' apparent intent to settle rather than on their failure to disclose Speaker's death. The question whether plaintiffs reasonably assumed Speaker remained alive becomes relevant only on the issue of causation, when determining whether defendants' misleading conduct (lulling plaintiffs into delaying suit) played a *substantial role* in causing the claim to become time-barred. The trier of fact may well find that plaintiffs carelessly failed to check the public records and nevertheless conclude defendants' conduct did play a substantial role in bringing about plaintiffs' predicament.

As did the appellate court, we must reverse the circuit court's grant of the motion to dismiss, and remand this cause for a determination whether defendants are estopped from asserting the statute of limitations as a defense. We do agree with the appellate court that the estoppel issue should be determined by a trier of fact other than the jury which may determine the merits of the negligence action. We do not agree, however, that the estoppel issue must be determined by a separate *jury*. Equitable estoppel, when considered separately and prior to the cause of action itself, may be determined by the circuit court. (Contra *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304.) There is no constitutional right to a jury trial in equitable proceedings or proceedings seeking equitable relief. (*Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146.) In accordance with section 2—1111 of the Civil Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1111), the circuit court may, of course, in its *discretion*, use a jury to determine the estoppel issue.

For the foregoing reasons, the circuit court's grant of the motion to dismiss is reversed, the appellate court's decision is affirmed, and this cause is remanded to the circuit court for determination of whether defendants are estopped from asserting the statute of limitations as a defense, before proceeding to the trial, if any, on the merits.

*Affirmed.*

JUSTICE RYAN, specially concurring:

I agree that this case must be remanded to the trial court, but, in my opinion, the hearing should be to determine whether the defendants have waived their right to assert the statute of limitations as a defense, not whether they are estopped to raise that defense. I do not agree that there has been any question of fact raised in this case concerning equitable estoppel. In the first

place, the plaintiffs were not lulled into failing to file their complaint before the limitation period had expired, because they in fact did file it five days before the statute ran. The plaintiffs just sued a party that did not exist. Their failure to sue the proper party cannot be attributed to the conduct of the representative of the insurance company, because his affidavit filed in the trial court shows that he did not know Speaker was deceased until plaintiffs' attorney called and told him of this fact after the limitation period had run. The party against whom equitable estoppel is asserted must have had knowledge at the time of the alleged representations that they were not true. (*Lowenberg v. Booth* (1928), 330 Ill. 548; *Barbour v. South Chicago Community Hospital* (1987), 156 Ill. App. 3d 324, 330; *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 111; see also *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 563.) Silence may give rise to equitable estoppel, but only when there is *knowledge* of the facts on one side and ignorance on the other. (*Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 95.) Thus, the essential element of knowledge by the defendant has not been shown in this case, either by the pleadings or the memorandum submitted to the trial court by the plaintiffs and the affidavit attached thereto.

Furthermore, there had been no contact at all between the representative of the insurance company and plaintiffs' attorney for more than four months before the limitation period had expired. In *Suing v. Catton* (1970), 118 Ill. App. 2d 468, 473, the appellate court stated: "Where the inducement for delay has ceased to operate before the expiration of the limitation period and the plaintiff has a reasonable time remaining within which to institute his suit, he cannot raise estoppel as an excuse for not filing his action within the time specified by the

statute of limitations," citing *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267.

As indicated above, plaintiffs were not lulled into not filing their complaint within the limitation period, because they had filed it before the time had expired. However, the rationale of the principle stated in *Suing v. Catton* applies equally well to this case. Whatever erroneous inferences plaintiffs may have drawn as a result of previous contacts with the representative of the insurance company concerning whether Speaker was living, the fact remains that the last contact between the insurance company and plaintiffs' attorney occurred more than four months before the limitation period had expired. Thus, plaintiffs had a reasonable time before the statute ran to ascertain whether Speaker was living, and should not now be permitted to excuse this error by claiming estoppel. In *Vail v. Northwestern Mutual Life Insurance Co.* (1901), 192 Ill. 567, 570, this court said: "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others."

Although I do not agree with the reasoning of the majority opinion on the estoppel issue, there is one thin thread of evidence in this case which compels me to concur in the result reached by the majority. This thin thread involves waiver, and not equitable estoppel. Although these two doctrines are often discussed together and the terms are often used interchangeably, they are in fact two different concepts, and waiver may be established even though the acts and conduct are not sufficient to establish estoppel. (See generally 28 Am. Jur. 2d *Estoppel & Waiver* §30 (1966).) Waiver is a voluntary and intentional relinquishment of a known right. (*Harris v. Faultfinders, Inc.* (1981), 103 Ill. App. 3d 785.) Waiver, as distinguished from estoppel, depends upon

what the defendant did or intended to do, without regard to the effect of his conduct upon the plaintiffs. *Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 372.

In the case before us, plaintiffs attached an affidavit to their "Memorandum in Opposition to Motion to Dismiss," which was filed in the trial court in response to the defendant's motion to dismiss. The motion to dismiss was based on plaintiffs' failure to file the complaint within the time permitted by law. The affidavit is that of the attorney for the plaintiffs. In the affidavit, the attorney, among other things, states that he had negotiated with the defendant's insurance company "and last attempted negotiation with Iowa Mutual Insurance Company on December 30, 1985, after the Statute of Limitations had run." From this quoted language it is not clear whether plaintiff's attorney last attempted to negotiate on December 30, 1985, or whether the insurance company had tried to negotiate a settlement on that date after the limitation period had expired. A reply memorandum was filed in the trial court, attached to which was an affidavit of the employee of the insurance company who handled the Speakers file. In this affidavit, he states, "I did not communicate with plaintiff's counsel concerning settlement after July 29, 1985." Thus, it appears that there may be a conflict in the two affidavits as to whether the insurance company attempted to negotiate after the statute had run. I, therefore, agree that this case should be remanded to the trial court and that a hearing should be held. However, in my opinion, the hearing should be limited to the question of waiver; that is, did the defendant's insurance carrier attempt to negotiate a settlement after the limitation period had expired, and if so, did the insurance company thereby indicate a relinquishment of its right to assert the limitations defense. For the reasons stated herein, I concur that this case should be remanded to the trial court,

but I do not agree that a hearing should be held on the question of estoppel, or that anything has been presented to this court or to the trial court which indicates that an equitable estoppel can be asserted against the defendants.

JUSTICE MILLER joins in this special concurrence.