978 F.2d 1261
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
STOTLER AND COMPANY, et al., Plaintiffs-Appellants,
v.
Leo TRUNKO, Defendant-Appellee.
 No. 92-1221.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 30, 1992.
Decided Oct. 15, 1992.
Order on Denial of Rehearing Nov. 30, 1992.
Memorandum on Petition for Appointment of New Panel
Nov. 30, 1992.
 
 1
 Before CUDAHY and EASTERBROOK, Circuit Judges, and WILLIAM C. LEE, District Judge*.
 
 Order
 
 2
 When the stock market dropped 25% in a single day in October 1987, the value of stock options in the account Leo Trunko held with Stotler & Co. dropped much faster. The account contained options on an index of stocks trading on the New York Stock Exchange. These options are the equivalent of being long in the stock, with high leverage. Options magnify whatever the market does, in both directions. On Black Monday (October 19) they dropped in value by about $400,000, leaving the account with a net negative value of more than $200,000 had all positions been closed immediately. Unexpired options would rise in value if the market recovered, so although Trunko did not meet Stotler's margin call he asked Stotler to refrain from liquidating his position. He offered to pledge $300,000 in stock as collateral.
 
 
 3
 Stotler did not reply to this letter, and Trunko never pledged the stock (which, under the UCC, entails physical delivery). Stotler continued issuing margin calls, which Trunko did not satisfy. Stotler gradually liquidated his positions, but as the market rebounded somewhat later in 1987, the total deficit was only $167,035 by the time all of the options had been sold.
 
 
 4
 Trunko signed Stotler's standard contract, which among other things set a limit of one year for either side to commence litigation. See Cange v. Stotler & Co., 826 F.2d 581, 584-85 (7th Cir.1987) (holding limitation valid). Stotler did not act within a year, or even within two years. In mid-April 1990 Stotler began this diversity suit, seeking recovery under its contract. The district judge dismissed the suit on the authority of the contractual limitations period, and we affirm.
 
 
 5
 Stotler believes that Trunko is estopped to enforce the contractual period because in 1987 he acknowledged the debt and promised to pay, even offering to pledge collateral. But Stotler did not accept this offer, in which the collateral would serve as consideration for forbearing to liquidate the positions. An affidavit filed by Jim Connors, the broker who managed Trunko's account, asserts that Trunko orally promised to pay. The affidavit does not provide the dates of any of these conversations, other than the one in October 1987 that led Trunko to send the letter. Trunko filed an affidavit stating that the last promise was made in 1987; no one on Stotler's side of the case has provided evidence to the contrary. Nor, for that matter, has Stotler offered evidence that anyone in authority at the firm relied on these statements. (Connors himself lacked authority to enforce or forgive the debt.) Under Illinois law, which governs this case, detrimental reliance is an element of equitable estoppel. Vaughn v. Sparks, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (1989).
 
 
 6
 In December 1987 Trunko opened a new account by sending $50,000 to Stotler. The firm insists that it would have offset these funds against the deficit in the other account, had it believed that Trunko would dishonor his promise. (By March 1989 offset was impossible; Trunko had lost the whole $50,000 despite the rapidly rising market.) Again no one in authority at Stotler provided evidence of reliance; one might more readily infer that Stotler kept its hands off the $50,000 because it hoped that Trunko would make enough to cover his losses. (Connors meanwhile gained commissions on the new trading.)
 
 
 7
 No matter how Stotler tries to wriggle, the fact remains that the contract gave it a year to decide how to proceed. Efforts to collect the debt informally are all to the good, but after repeated promises have not been matched by payment, the firm must cut its losses. If the combination of lulling promises and the new account tolled the time for a limited period, the tolling was at an end before April 1989. Stotler's suit in April 1990 was untimely, just as the district judge held.
 
 
 8
 AFFIRMED.
 
 Memorandum
 On the Petition For Appointment of
 
 9
 New Appellate Panel and For Rehearing,
 
 
 10
 Filed October 29, 1992,
 
 
 11
 by Appellants Stotler and Co., et al.
 
 
 12
 Nov. 30, 1992.
 
 
 13
 LEE, District Judge.*
 
 
 14
 The undersigned, a member of the panel of judges in the within cause, makes the following response to the Petition for Appointment of New Appellate Panel and For Rehearing, filed October 29, 1992, by Stotler and Company, et al., Appellants:
 
 
 15
 1. The undersigned is the half brother of Walter E. Lee.
 
 
 16
 2. The undersigned had two conversations with Walter E. Lee about an alleged claim by Walter E. Lee against a brokerage firm, which alleged claim purportedly arose out of commodity trading through said firm. To the best of the undersigned's recollection, those conversations took place some time in 1985.
 
 
 17
 3. In those conversations the undersigned expressed his opinion that Walter E. Lee did not have a competent claim against said firm. The undersigned has not discussed the matter with Walter E. Lee since that time. Further, the undersigned has had no contact with Walter E. Lee since that time, except for contacts which occurred at the time of the death of their father in January of 1987.
 
 
 18
 4. Sometime within the past year or two the undersigned had a telephone conversation with an individual who called to report that Walter E. Lee was harassing an associate of the individual concerning the above referenced alleged claim. Although the undersigned has no independent recollection of the individual's name or of the exact date of the conversation, the undersigned assumes that individual was Roger LaRue and that the conversation took place in early 1991, as Roger LaRue has represented.
 
 
 19
 5. In that conversation, the undersigned expressed his sympathy over the harassment and indicated taht he would consider contacting Walter E. Lee. However, in the same conversation, the undersigned expressed the view that such contact would not likely be effective in stopping the harassment and might only encourage further such harassment because of the estrangement between the undersigned and Walter E. Lee. In fact, upon reflection, the undersigned decided not to contact Walter E. Lee, and the undersigned did not contact Walter E. Lee regarding such harassment.
 
 
 20
 6. While it is probable that the name of the brokerage firm involved in the matter was mentioned in the three above referenced conversations, the undersigned simply did not retain or remember the name of the brokerage firm. the undersigned was not aware that the brokerage firm involved in the matter was Stotler and Company until receipt of a copy of the instant petition.
 
 
 21
 7. The alleged claim of Walter E. Lee against Stotler and Company did not influence the undersigned's consideration of Clause No. 92-1221, Stotler and Company, et al., v. Trunko in any manner.
 
 
 22
 8. In light of the information contained in the instant petition and as set forth herein, the undersigned does now recuse himself from further participation in this cause.
 
 
 
 *
 Of the Northern District of Indiana, sitting by designation
 
 
 *
 The Hon. William C. Lee of the Northern District of Indiana, is sitting by designation