# Illinois Official Reports

## Appellate Court

---

| | |
|---|---|
| | ***City of Urbana v. Platinum Group Properties, LLC*, 2020 IL App (4th) 190356** |

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF URBANA, ILLINOIS, a Municipal Corporation, Plaintiff-Appellee, v. PLATINUM GROUP PROPERTIES, LLC, Defendant (PLATINUM GROUP PROPERTIES, LLC-SUNNYCREST SERIES, Defendant-Appellant). |
| District & No. | Fourth District<br>No. 4-19-0356 |
| Filed | March 11, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 14-OV-526; the Hon. John R. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James A. Martinkus, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellant.<br><br>James L. Simon and Curt S. Borman, of Urbana, for appellee. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices DeArmond and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1 In June 2014, plaintiff, the City of Urbana, a municipal corporation (City), filed a complaint for property maintenance code violations against defendant, Platinum Group Properties, LLC, (Platinum Group) for three of its buildings located on adjacent properties in the City. After a lengthy trial, the Champaign County circuit court found the Platinum Group's three buildings violated numerous ordinances and fined defendant a total of $473,700 and ordered it to pay court costs as well. The Platinum Group appealed, and this court affirmed the violation of the ordinances. *City of Urbana v. Platinum Group Properties, LLC*, 2017 IL App (4th) 160497-U. However, as to the fines, this court vacated the $118,425 criminal surcharge assessment (730 ILCS 5/5-9-1(c) (West 2012)), reversed the fine, and remanded the cause for the circuit court to reconsider its imposition of the fine in light of our order. *City of Urbana*, 2017 IL App (4th) 160497-U, ¶¶ 62, 64.

¶ 2 On remand, the City and the Platinum Group both filed a memorandum on the fine issue in 2017. At a November 2017 hearing, the circuit court entered a judgment totaling $45,000 in fines. In November 2018, the City filed a motion to amend the record to reflect "Defendant by its full name, 'Platinum Group Properties, LLC-Sunnycrest Series' rather than its short-form name, 'Platinum Group Properties, LLC' " pursuant to section 2-401(b) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-401(b) (West 2018)). The Platinum Group filed a memorandum in opposition to the City's section 2-401(b) motion. After a March 2019 hearing on the section 2-401(b) motion, the circuit court entered a written order allowing the motion and substituting the name "Platinum Group Properties, LLC-Sunnycrest Series" (Sunnycrest) for Platinum Group. The order also specified the court's orders of May 2016 and November 2017 shall be deemed to have been entered against Sunnycrest. In March 2019, Sunnycrest filed a special and limited appearance for the purpose of objecting to personal jurisdiction over it and to vacate the court's March 2019 order, and the City filed a response. After a May 2019 hearing, the court denied Sunnycrest relief.

¶ 3 Sunnycrest appeals, contending the circuit court erred by denying (1) Sunnycrest's special and limited appearance for the purpose of objecting to personal jurisdiction over it and (2) its request to vacate the court's March 2019 order. We affirm.

¶ 4 I. BACKGROUND

¶ 5 This case involves three separate properties located in Urbana, Illinois, and commonly known as 1302 East Silver Street, 1304 East Silver Street, and 1401 East Silver Street. Each of the three properties contains a two-story apartment building. Sunnycrest holds legal title to the three properties. Sunnycrest is allegedly a legally formed series LLC of the Platinum Group. Paul Zerrouki is the manager of both the Platinum Group and Sunnycrest. Zerrouki and his wife, Nicolette Negrau, are the principal owners of the Platinum Group and Sunnycrest.

¶ 6 A May 29, 2012, inspection of the three buildings resulted in the discovery of several issues of noncompliance with the City's building code. In a June 2012 letter addressed to Sunnycrest, the City's housing inspector noted the compliance issues and ordered Sunnycrest to have the defects evaluated by a licensed structural engineer and to provide a copy of the engineer's report by June 15, 2012. It also ordered any necessary repairs listed in the report to be completed no later than July 16, 2012, and noted the work would require a building permit. The buildings were vacated in February 2013 due to further deterioration. In May 2013,

Zerrouki filed building permit applications for the three properties, listing the property owner as the Platinum Group. In June 2014, Zerrouki again filed building permit applications for the three properties and again listed the Platinum Group as the owner of the properties. From June 2012 to 2014, the City's staff sent numerous letters regarding the three properties, some of which were addressed to Sunnycrest and some of which were addressed to the Platinum Group.

¶ 7 On June 11, 2014, the City filed its complaint for property maintenance code violations against "Platinum Group Properties, LLC." The summons also listed "Platinum Group Properties, LLC" as defendant. "Personal Service" of the summons and complaint were both personally served on Harold Adams, who was the registered agent for both the Platinum Group and Sunnycrest. "Corporate Service" was personally served on "Paul Zerroki" as manager of "Platinum Group Properties, LLC." In August 2014, Matthew Peek entered his appearance on behalf of "Platinum Group Properties, LLC." The City filed two amended complaints before trial, both of which listed the defendant as "Platinum Group Properties, LLC."

¶ 8 On November 3, 2014, the circuit court commenced the bench trial on the ordinance violations. The court heard evidence over many days, with the last day being August 18, 2015. Zerrouki testified on the last day. He testified the three properties were part of the company called Platinum Group Properties and he and his wife were the principal owners of Platinum Group Properties. Zerrouki testified he purchased the properties in 1998 or 1999. After the conclusion of the evidence, the parties filed written memoranda supporting their respective positions. In its memorandum, the Platinum Group stated the three properties were owned by Platinum Group Properties LLC.

¶ 9 On May 18, 2016, the circuit court announced its decision. The court found each of the three properties violated numerous sections of the International Property Maintenance Code of 2009 and the City Property Maintenance Code. The court found the violations began on June 5, 2012, and lasted until June 25, 2014. The court imposed a total fine of $473,700 on the Platinum Group and ordered it to pay court costs.

¶ 10 The Platinum Group appealed the circuit court's May 2016 judgment, and we affirmed the violation of the ordinances. *City of Urbana*, 2017 IL App (4th) 160497-U. However, as stated, we vacated the $118,425 criminal surcharge assessment, reversed the fine, and remanded the cause to the circuit court for further proceedings on the fine. *City of Urbana*, 2017 IL App (4th) 160497-U, ¶¶ 62, 64. On remand, the City and the Platinum Group both filed a memorandum on the fine issue in 2017. At a November 2017 hearing, the circuit court entered a judgment against the Platinum Group for fines totaling $45,000 to be paid within 12 months.

¶ 11 In November 2018, the City filed its misnomer motion, seeking to amend the record to reflect "Defendant by its full name, 'Platinum Group Properties, LLC-Sunnycrest Series' rather than its short-form name, 'Platinum Group Properties, LLC.' " The City asserted (1) it intended to sue Sunnycrest since it was the owner of the three buildings and the real party in interest, (2) the City served Sunnycrest's agent and manager with the summons, (3) the summons and complaint used a shortened form of Sunnycrest's name because that is what Sunnycrest used when communicating with the City prior to the lawsuit, and (4) Sunnycrest was put on notice of the lawsuit. The City also attached numerous exhibits to its misnomer motion, one of which was a printout of the Secretary of State's website page for the Platinum Group. The printout stated the Platinum Group had four series LLCs, including Sunnycrest.

¶ 12 The Platinum Group filed a memorandum in opposition to the City's section 2-401(b) motion, asserting Sunnycrest was an independent entity from the Platinum Group. It further

claimed service had never been made on Sunnycrest and this was a case of the plaintiff suing the wrong entity and not misnomer. The Platinum Group did not attach any exhibits to its response.

¶ 13    The City filed a reply, noting the Secretary of State's website listed Harold Adams as the registered agent for Sunnycrest and Paul Zerrouki as the manager of Sunnycrest. The City also noted the Platinum Group vigorously defended the lawsuit for more than three years and represented to the court it was the real party in interest by admitting it owned the buildings at issue in this case. The City attached Zerrouki's trial testimony to its reply.

¶ 14    In February 2019, the circuit court held a hearing on the City's misnomer motion. The court only heard arguments on the motion and took the matter under advisement. On March 13, 2019, the court entered a written order allowing the motion and substituting the name "Platinum Group Properties, LLC-Sunnycrest Series" for the Platinum Group. The order also specified the court's prior orders of May 2016 (finding the ordinance violations) and November 2017 (imposing the $45,000 fine) shall be deemed to have been entered against Sunnycrest. The court's order also noted the memorandum of judgment recorded by the City on January 19, 2018, in the amount of $45,000, shall be deemed to have been recorded against all property owned by Sunnycrest.

¶ 15    In March 2019, Sunnycrest filed a special and limited appearance for the purpose of objecting to personal jurisdiction over it and to vacate the court's March 2019 order. Sunnycrest asserted it was a separate entity from the Platinum Group, and it was never served in this case. Sunnycrest did not attach any exhibits to its motion. Since it was never served, Sunnycrest argued the circuit court lacked personal jurisdiction over it. The City filed a response, arguing the circuit court had already rejected Sunnycrest's argument and Sunnycrest had waived its objection to jurisdiction. Sunnycrest filed a reply, again asserting the Platinum Group is a separate entity from Sunnycrest. Sunnycrest attached a verified statement by Adams, the summons delivered to Adams, and the affidavit of the process server who served Adams. In his verified statement, Adams stated Sunnycrest was an independent corporate entity from its parent corporation, the Platinum Group. He further stated he was not advised he was being served as an agent of Sunnycrest and had never been served as an agent for Sunnycrest.

¶ 16    On May 8, 2019, the circuit court held a hearing on Sunnycrest's motion. A report of proceedings for the hearing is not included in the record on appeal. The day after the hearing, the court entered a written order denying Sunnycrest's motion.

¶ 17    On June 6, 2019, Sunnycrest filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Thus, this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 18                                II. ANALYSIS
¶ 19                            A. Standard of Review
¶ 20    Citing *Hendry v. Ornda Health Corp.*, 318 Ill. App. 3d 851, 852, 742 N.E.2d 746, 748 (2000), Sunnycrest contends the appropriate standard of review is *de novo* because the issue is one of personal jurisdiction and an evidentiary hearing was not held on the issue. See also *Schaefer v. Synergy Flight Center, LLC*, 2019 IL App (1st) 181779, ¶ 8. The City disagrees and contends the appeal turns on whether the circuit court properly applied the misnomer

statute, which is reviewed under the abuse of discretion standard. See *Fassero v. Turigliatto*, 349 Ill. App. 3d 368, 372, 811 N.E.2d 252, 256 (2004). Misnomer and personal jurisdiction are interrelated. The misnomer statute applies to correctly joined and served, but misnamed, parties, *i.e.*, parties over which the circuit court had personal jurisdiction. *Barbour v. Fred Berglund & Sons, Inc.*, 208 Ill. App. 3d 644, 648, 567 N.E.2d 509, 512 (1990). While courts have generally applied the abuse of discretion standard when reviewing a ruling on a motion for misnomer, it appears a bifurcated standard of review should apply when an evidentiary hearing is not held. Under the bifurcated standard, the question of personal jurisdiction is reviewed *de novo* and the ultimate ruling on the motion for misnomer is reviewed under the abuse of discretion standard of review. A circuit court abuses its discretion "when its decision is 'fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Kladis*, 2011 IL 110920, ¶ 23, 960 N.E.2d 1104 (quoting *People v. Ortega*, 209 Ill. 2d 354, 359, 808 N.E.2d 496, 500-01 (2004)). Regardless of the standard of review applied, we find no circuit court error.

¶ 21 Additionally, we note this court may affirm the circuit court's judgment on any basis in the record, regardless of whether the circuit court relied upon that basis or whether the circuit court's reasoning was correct. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 734, 910 N.E.2d 1134, 1148 (2009).

¶ 22                                       B. Personal Jurisdiction and Misnomer

¶ 23 " 'Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction.' " *Arch Bay Holdings, LLC-Series 2010B v. Perez*, 2015 IL App (2d) 141117, ¶ 10, 43 N.E.3d 562 (quoting *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18, 6 N.E.3d 162). Section 2-401(b) of the Procedure Code (735 ILCS 5/2-401(b) (West 2018)) addresses the misnomer of a party. That section provides "[m]isnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b) (West 2018). Our supreme court explained the misnomer provision "does not encompass naming the wrong party but instead encompasses naming the right party by the wrong name." *Vaughn v. Speaker*, 126 Ill. 2d 150, 158, 533 N.E.2d 885, 888 (1988). "The determination of whether the correction of a particular error in naming a party is merely a correction of a misnomer, or is instead an actual change of parties, should be made based upon conclusions about the intention and understanding of the parties." *Vaughn*, 126 Ill. 2d at 158.

¶ 24 Sunnycrest argues it is a series LLC and, for the first time, cites section 37-40 of the Limited Liability Company Act (Act) (805 ILCS 180/37-40 (West 2018)) in support of its argument it is a separate corporate entity from the Platinum Group. Sunnycrest further contends the circuit court never had personal jurisdiction over it and the misnomer statute is inapplicable, since it is a separate corporate entity. Thus, we address the applicability of section 37-40 of the Act.

¶ 25                                            C. Section 37-40 of the Act

¶ 26 Section 37-40(a) of the Act (805 ILCS 180/37-40(a) (West 2018)) authorizes an LLC to form one or more series. "The whole purpose of forming a series LLC is to be able to insulate the assets of one series from the liabilities of the LLC itself or any of its other series, and vice

versa." 7 Charles W. Murdock, Illinois Practice, Business Organizations § 5:26 (2d ed. 2010). Despite the provision being adopted in 2005 (see Pub. Act 94-607, § 5 (eff. Aug. 16, 2005) (adding 805 ILCS 180/37-40)), no reported case has addressed this provision. Thus, the implications of section 37-40 are a matter of first impression. The facts of this case highlight the complexity the provision creates for litigation involving series LLCs.

¶ 27 While section 37-40(a) authorizes the creation of the series, section 37-40(b) of the Act (805 ILCS 180/37-40(b) (West 2018)) sets forth the requirements for establishing a series LLC. To create a series LLC, the "parent" LLC's operating agreement must provide for the creation of the series LLC and give notice of the limitation on liabilities of the series. 805 ILCS 180/37-40(b) (West 2018). Each series must have "separate and distinct records" and must be "accounted for separately from the other assets of the limited liability company[ ] or any other series thereof." 805 ILCS 180/37-40(b) (West 2018). Moreover, the LLC must file a certificate of designation with the Secretary of State for each series that is to have limited liability under section 37-40. 805 ILCS 180/37-40(b) (West 2018).

¶ 28 If the aforementioned requirements are met, then the following limited liability exists:

> "debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the limited liability company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the limited liability company generally or any other series thereof shall be enforceable against the assets of such series." 805 ILCS 180/37-40(b) (West 2018).

Additionally, the series with limited liability is treated as a separate entity to the extent set forth in the articles of organization. 805 ILCS 180/37-40(b) (West 2018). Section 37-40(b) of the Act further provides the following:

> "Each series with limited liability may, in its own name, contract, hold title to assets, grant security interests, sue and be sued and otherwise conduct business and exercise the powers of a limited liability company under this Act. The limited liability company and any of its series may elect to consolidate their operations as a single taxpayer to the extent permitted under applicable law, elect to work cooperatively, elect to contract jointly or elect to be treated as a single business for purposes of qualification to do business in this or any other state. Such elections shall not affect the limitation of liability set forth in this Section except to the extent that the series have specifically accepted joint liability by contract." 805 ILCS 180/37-40(b) (West 2018).

The LLC's articles of organization, containing the notice of the limitation on liabilities of a series and a certificate of designation for a series on file in the Office of the Secretary of State, constitute notice of the limitation on liabilities of a series. 805 ILCS 180/37-40(b) (West 2018).

¶ 29 A certificate of designation for a series may be executed by the LLC or any manager, person, or entity designated in the operating agreement for the LLC. 805 ILCS 180/37-40(d) (West 2018). If the manager or any member having the authority of a manager is different from the LLC, then the certificate of designation for each series must list the name and business address of any manager and any member having the authority of a manager. 805 ILCS 180/37-40(d) (West 2018). When the certificate of designation is filed with the Secretary of State, setting forth the name of each series with limited liability, then

"the series' existence shall begin, and each of the duplicate copies stamped 'Filed' and marked with the filing date shall be conclusive evidence, except as against the State, that all conditions precedent required to be performed have been complied with and that the series has been or shall be legally organized and formed under this Act." 805 ILCS 180/37-40(d) (West 2018).

¶ 30    Additionally, the Act requires "the name of the series with limited liability must commence with the entire name of the limited liability company, as set forth in its articles of organization, and be distinguishable from the names of the other series set forth in the articles of organization." 805 ILCS 180/37-40(c) (West 2018). Also, "[t]he registered agent and registered office for the limited liability company in Illinois shall serve as the agent and office for service of process in Illinois for each series." 805 ILCS 180/37-40(f) (West 2018).

¶ 31                                   D. Facts of This Case

¶ 32    The crux of Sunnycrest's limited appearance, asserting lack of personal jurisdiction over it and requesting vacatur of the circuit court's March 13, 2019, order granting the City's motion to substitute under the misnomer statute, was Sunnycrest is a separate entity from the Platinum Group. However, Sunnycrest's assertion in its limited appearance was conclusory. It did not cite section 37-40 of the Act and did not provide a file-stamped copy of the certificate of designation for Sunnycrest, which section 37-40(d) of the Act (805 ILCS 180/37-40(d) (West 2018)) provides is conclusive evidence that all of the required conditions have been complied with and a series has been legally organized and formed under the Act.

¶ 33    In its reply to the City's response, Sunnycrest again simply argued it was fundamental corporate law that the parent company is a distinct and separate entity from any of its series. It did reference the City's exhibit C, which was attached to the November 2018 motion to substitute. Exhibit C is a printout of two pages from the Secretary of State's website. The pages are the LLC File Detail Report for the Platinum Group. The report indicates the Platinum Group is an active LLC and has four active series, one of which is Sunnycrest. The listed agent was Harold N. Adams and the listed LLC manager is Paul Zerrouki. The two pages do not contain the certificate of designation for Sunnycrest. Sunnycrest also presented Adams's statement, in which he states Sunnycrest is an independent entity from the Platinum Group.

¶ 34    Additionally, we note the record on appeal lacks a transcript, bystander's report, or agreed statement of facts for the May 8, 2019, hearing on Sunnycrest's motion. See Ill. S. Ct. R. 323 (eff. July 1, 2017). As the appellant, Sunnycrest "has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392. Since the record does not show Sunnycrest supported its claim it was a separate entity from the Platinum Group with a certificate of designation and citation to section 37-40 of the Act, Sunnycrest failed to establish in the circuit court it was a separate entity from Platinum Group. Given the numerous requirements of section 37-40 and its provision stating what is conclusive evidence of the series legal formation under the Act, a mere statement a series LLC is a separate entity from the LLC is insufficient to establish such. Accordingly, we find the circuit court did not err by denying Sunnycrest's motion to vacate.

## E. Estoppel

Even if Sunnycrest had established it was a separate entity under section 37-40 of the Act, our outcome would be the same because Sunnycrest is estopped from asserting there is no misnomer.

In *Marsden v. Neisius*, 5 Ill. App. 2d 396, 400, 126 N.E.2d 44, 46 (1955), the plaintiff intended to sue a corporation for which the corporation's agent negligently brought about the injuries on which the complaint was made. The plaintiff's complaint named " 'C. & H. Transfer Company, a Wisconsin Corporation,' as defendant." *Marsden*, 5 Ill. App. 2d at 397. Edward J. Neisius filed an answer stating the corporation did not exist, and he did business as " 'C. & H. Transfer.' " *Marsden*, 5 Ill. App. 2d at 400. Neisius also stated he had notice of the suit. *Marsden*, 5 Ill. App. 2d at 400. The reviewing court found that, under these facts and circumstances, Neisius implied he was the one intended to be sued, and by filing his answer, Neisius suggested and conceded there was a misnomer. *Marsden*, 5 Ill. App. 2d at 400. Since Neisius filed his answer, the court found he was estopped from now asserting the corporation's name was not a misnomer. *Marsden*, 5 Ill. App. 2d at 400. However, the reviewing court did caution that, without Neisius's answer, the court would have found a mistake in identity of the person sued and not a misnomer. *Marsden*, 5 Ill. App. 2d at 400-01.

This case is an ordinance violation case, and no answer was filed. However, a similar situation to the one in *Marsden* arose. Here, Sunnycrest and the Platinum Group had the same agent for service and the same manager. Moreover, Sunnycrest's name is the same as the Platinum Group with the addition of two words, "Sunnycrest Series." The title holder of the properties charged with ordinance violations was Sunnycrest. While the complaint and summons listed the Platinum Group, manager Zerrouki appeared at trial and testified. He testified the properties in question were "part of the company called Platinum Group Properties." Zerrouki further testified he and his wife were "the principal owners of Platinum Group Properties." He also testified he bought the properties in 1998 or 1999. Moreover, after the conclusion of the evidence in August 2015, the parties filed written memoranda supporting their respective positions. In its memorandum, the Platinum Group admits it is the owner of the properties at issue and cites Zerrouki's aforementioned testimony at trial. As manager of both Sunnycrest and the Platinum Group, Zerrouki knew which of his corporate entities held legal title to the properties in question. Thus, as in *Marsden*, Zerrouki's testimony and the Platinum Group's memorandum indicate Sunnycrest conceded there was a misnomer. Accordingly, Sunnycrest would be estopped from asserting no misnomer. Like *Marsden*, absent the admission of ownership at trial and in the memorandum, this would be a case of mistaken identity and not misnomer.

## III. CONCLUSION

For the reasons stated, we affirm the Champaign County circuit court's judgment.

Affirmed.