PHILIP AUGUSTUS *et al.*, Plaintiffs-Appellants, v. ESTATE OF GENE SOMERS, Deceased, by and through Thomas Goodwin, Special Adm'r for the Estate of Gene Somers, Decedent, Defendant-Appellee.

Fourth District   No. 4—95—0253

Opinion filed February 23, 1996.

COOK, P.J., dissenting.

Nicholas M. Schiro, of Doyle & Tuggle, of Danville, for appellants.

Michael J. Tague, of Flynn, Palmer & Tague, of Champaign, for appellee.

°JUSTICE KNECHT delivered the opinion of the court:

Plaintiffs Phillip and Patricia Augustus appeal the trial court's grant of summary judgment for defendant estate of Gene Somers, by and through Thomas Goodwin, special administrator for the estate of Gene Somers, decedent. We affirm.

Plaintiffs were involved in an automobile accident with decedent on April 14, 1992, which allegedly resulted in injuries to plaintiffs. Decedent died on September 26, 1992.

On March 21, 1994, plaintiffs filed a complaint titled "Patricia Augustus and Phillip Augustus v. Gene Summers [*sic*] and Marlyss Summers [*sic*]." Process was served on Marlyss Somers personally. The return for service on Gene Somers shows service was attempted by abode service by handing Marlyss Somers a copy of the complaint against Gene Somers and by mailing a copy of the complaint to Gene Somers.

On April 11, 1994, plaintiffs filed a motion to quash summons and motion to dismiss the complaint. On April 22, 1994, plaintiffs filed a motion for appointment of special administrator, a petition for

substitution of special administrator for deceased party, and a motion suggesting death of a party defendant. On April 29, defendant filed objections to these motions and petitions, noting Thomas Goodwin had already been appointed as special administrator of decedent's estate (No. 92—P—317). Plaintiffs withdrew their petitions and motions and on May 26 filed a motion for leave to file an amended complaint. On July 8, plaintiffs filed an amended complaint naming the estate of Gene Somers, deceased, by the special administrator Thomas Goodwin, as defendant.

In January 1995, defendant filed a motion for summary judgment asserting plaintiffs' complaint was barred by the two-year statute of limitations. Attached to its motion was an excerpt of the transcript of the deposition testimony of plaintiff Patricia taken in November 1994. During the deposition, the following colloquy occurred:

"Q. [By counsel not identified in transcript excerpt:] When did you learn that Mr. Somers passed away?

A. [Patricia:] It was late one evening, we picked up the newspaper, I think my husband was taking a bath or a shower, and I got to the obituary page and I saw it. And I screamed, 'Oh, Phil, my God, come here. Mr. Gene Somers has passed away. Would you please read this and see if it's the same one who hit us?' And he did and he said yes. And I just shivered, I had cold chills, I was just shocked.

***

Q. Let me ask you, do you remember the day that you read the obituary?

A. I wrote down the day of his death.

Q. Did you write down the day of his death on the day that you read this obituary?

A. Yes.

***

Q. And it would have been within—would it be a fair statement it would have been within several days of his death that you—that [decedent's obituary] would have been in the paper?

A. Yes."

Defendant asserted because the statute of limitations had run, and because of the fact plaintiffs knew of decedent's death, they could not substitute decedent's estate as the defendant after the statute of limitations had run and plaintiffs could not file suit against decedent's estate.

Plaintiffs responded their amended complaint should relate back to the initial complaint because they were not aware of decedent's death because of their mistaken spelling of decedent's last name, i.e., they believed it had been spelled "Summers" rather than the true

spelling "Somers." Plaintiffs also argued, in the alternative, defendant was estopped from asserting the statute of limitations defense because defendant's insurance company, Standard Mutual, led plaintiffs to believe the case would be settled. Plaintiffs' attorney, Nicholas Schiro, sent a letter to Standard Mutual dated December 6, 1993, in which he stated, "[i]f you want to settle [the case], then tender the policy limits of $250,000.00 immediately. *** You must realize that if the policy limits are not tendered, we will have no choice but to file suit[.]" In a reply letter dated December 9, 1993, Standard Mutual correctly spelled decedent's last name and responded, "We certainly have no information which would suggest that your client's claim has any value near our insured's policy limit. *** Based upon the information at hand, we will increase our offer to $8,500.00 to amicably resolve the claim at this juncture." No further offers or counteroffers had been made.

The trial court granted defendant's motion for summary judgment, finding plaintiffs had either actual or constructive notice of decedent's death, that substitution of the personal representative of decedent's estate was not proper and no conduct by defendant supported plaintiffs' estoppel argument. Plaintiffs appeal.

Summary judgment is proper only where the pleadings, depositions and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. This court reviews summary judgment orders *de novo* and may affirm the trial court's result on any basis the record permits, even if not the ground on which the court based its ruling. *Sandstrom v. De Silva* (1994), 268 Ill. App. 3d 932, 935, 645 N.E.2d 345, 347.

■ Section 2—616(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2—616(d) (West 1992)), governing "relation back," declares:

"A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of summons was in fact had upon the person, his or her agent or partner, as the nature of the defendant made appropriate, even though he or she was served in the wrong capacity or as agent of another, or upon a trustee who has title to but no power of management or control over real property constituting a trust of which the person is a beneficiary; (4) the person, within the time that the action

might have been brought or the right asserted against him or her, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him or her; and (5) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading ***. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended."

Here, plaintiffs assert all five conditions of section 2—616(d) of the Code are met. We need not examine all five conditions, however, because the failure to satisfy even one of the requisite elements of section 2—616(d) of the Code precludes the amended complaint from relating back. *Webb v. Ambulance Service Corp.* (1994), 262 Ill. App. 3d 1039, 1043-44, 635 N.E.2d 643, 646.

■ Plaintiffs do not meet the second requirement: inadvertence in failing to name the proper defendant in earlier pleadings. Although the statute does not define "inadvertence," the term was first defined in *Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 61, 176 N.E.2d 659, 662, where the First District Appellate Court defined "inadvertence" as used in section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1959, ch. 110, par. 46(4)), a predecessor to section 2—616 of the Code (735 ILCS 5/2—616 (West 1992)). In *Robinson*, a plaintiff sought to amend her pleading to include a defendant, arguing even though she had been aware of the identity of the defendant six months prior to the running of the statute of limitations, her failure to name the defendant had been merely "inadvertent." The court disagreed:

"In our view the word 'inadvertence' means excusable ignorance, not excusable failure to act after the facts are discovered. When plaintiff read the answers to the interrogatories she knew the identity of the proper defendants. She was not then ignorant of any fact. A plaintiff must act with reasonable diligence after the identity of the true defendants becomes known." (*Robinson*, 32 Ill. App. 2d at 61, 176 N.E.2d at 662.)

This court adopted this definition in *Cox v. Shupe* (1963), 41 Ill. App. 2d 413, 419-20, 191 N.E.2d 250, 253-54. There, after the statute of limitations had run, the plaintiff sought to amend her complaint to include additional defendants, even though she had been aware of their identity 14 months prior to the running of the statute of limitations. She argued section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1961, ch. 110, par. 46(4)) allowed her to add these defendants because her failure to do so had been merely "inadvertent." This court fol-

lowed *Robinson* and rejected the plaintiff's argument. This court concluded:

> "To adopt plaintiff's reasoning would, theoretically, place no time limit upon a suit, and would nullify any protection against stale claims. We hold, under the facts of this case, that plaintiff's failure to add the additional parties was not inadvertent, but was inexcusable failure to act with reasonable diligence after defendants' identity became known." (*Cox*, 41 Ill. App. 2d at 420, 191 N.E.2d at 253-54.)

Since *Robinson* and *Cox*, this definition of "inadvertence" has been applied consistently in a long line of cases in the appellate courts:

> " 'Inadvertence' has been defined as excusable ignorance, not excusable failure to act after the facts are discovered, and it does not include the failure to act appropriately where the defendant's true identity is known by the plaintiff. *** Where a plaintiff has been made aware of the identity of a defendant before the period of limitations has run, but does not amend his complaint to add that defendant until after the statute has run, the failure to join that defendant will not be considered inadvertent." (*Zincoris v. Hobart Brothers Co.* (1993), 243 Ill. App. 3d 609, 614, 611 N.E.2d 1327, 1331.)

Our research has revealed no case which has repudiated these principles, and no case which has held contrary to these cases and allowed a plaintiff to add a defendant under section 2—616 of the Code when the plaintiff knew of the true identity of that defendant prior to the running of the statute of limitations. Plaintiffs and the dissent would have us rule contrary to 35 years of case law interpreting section 2—616, and allow plaintiffs to amend their complaint even though they were aware of decedent's death 18 months prior to the running of the statute of limitations. We decline to do so. The reasoning of this court in *Cox* is no less persuasive today. Plaintiffs cannot rely on section 2—616 as support for their position.

Plaintiffs would have us believe the fact their attorney mistakenly spelled "Somers" as "Summers" in later pleadings reveals they were not aware of the death of decedent Gene "Somers" until after his estate responded in pleadings and indicated decedent had died. However, this contradicts the clear and undisputed deposition testimony of plaintiffs in which they admit they became aware of the death of decedent in late September or early October 1992. According to the deposition testimony of Patricia, she and her husband Phillip read decedent's obituary within a few days after his death, and Phillip stated it was the same person involved in their car accident and named as a defendant in their ongoing litigation. Moreover, in plaintiffs' "Response to Defendant's Request to Admit" dated Janu-

ary 1995, plaintiffs *admit* they knew of decedent's death within several days of his death *and told their attorney decedent had died.* In their response, plaintiffs also state their attorney then mistakenly searched the probate records for Gene "Summers," and after the search did not indicate the death of Gene "Summers," their attorney proceeded on the assumption the defendant was still alive. However, plaintiffs offer no explanation how their attorney ignored several correspondences to him from Standard Mutual, decedent's insurer, in which it correctly spelled "Somers" as the name of its insured. Standard Mutual did so in correspondence to plaintiffs' attorney dated September 7, November 16, December 4, and December 9, 1993. This gave plaintiffs' attorney at least *seven months'* notice prior to the running of the statute of limitations to conduct a probate search for Gene "Somers," but plaintiffs' attorney did not do this. Plaintiffs did not file a pleading naming the estate of decedent as a defendant, however, until July 1994.

Notwithstanding these facts, plaintiffs suggest they and their attorney did not file an amended complaint until this time because *their misspelling* of decedent's last name *caused them to be unaware of decedent's death.* This claim amounts to an intentional misrepresentation to the court. Plaintiffs had about 18 months left to file their pleadings after having actual knowledge of decedent's death, but did not name the estate or move to amend to do so in that time frame. Their late efforts may have been diligent in the sense they proceeded in this fashion within weeks of filing their original complaint, but their delay was not inadvertent. Because plaintiffs failed to meet this condition of section 2—616(d) of the Code, we need not discuss the other statutory requirements.

Plaintiffs rely heavily on *Evans v. Graber, Inc.* (1983), 115 Ill. App. 3d 532, 537, 450 N.E.2d 482, 485-86. They correctly note *Evans* stands for the proposition a plaintiff under section 2—616(d) may file an amended pleading relating back to the initial pleading where the plaintiff diligently moves to timely amend the pleading soon after learning the identity of the proper defendant. Plaintiffs focus our attention on the fact they diligently amended their complaint to properly spell decedent's last name "Somers" soon after learning of the correct spelling. However, the spelling of decedent's last name is irrelevant here. By their own admission they knew of decedent's death in September 1992, yet did not name his *estate* as a party defendant until July 1994. Moreover, plaintiffs' attorney had notice of the correct spelling of decedent's last name as early as September 1993, but made *no* attempt to ascertain whether Gene "Somers," rather than Gene "Summers," had died, as plaintiffs had informed him. This is not diligent.

Although plaintiffs make no such argument, the dissent concludes plaintiffs were entitled to name the estate of Gene Somers as a defendant under section 13—209(c) of the Code, which states:

"If a party commences an action against a deceased person *whose death is unknown to the party* before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred, the action may be commenced against the deceased person's personal representative if all of the following terms and conditions are met:

(1) *After learning of the death,* the party proceeds with reasonable diligence to move the court for leave to file an amended complaint, substituting the personal representative as defendant." (Emphasis added.) (735 ILCS 5/13—209(c)(1) (West 1992).)

As we have already explained, plaintiffs were aware of decedent's death at the time they filed their complaint naming him as a defendant. Therefore, section 13—209(c) of the Code would appear inapplicable. The dissent, however, although admitting section 13—209(c) uses the words "whose death is unknown to the party," believes these words do not impose a substantive condition and section 13—209(c) applies even where a plaintiff is aware of a defendant's death yet acts carelessly in naming the deceased person instead of the estate. (See 278 Ill. App. 3d at 103.) We understand the dissent's concern, in essence, that form not be elevated over substance. However, the dissent's proposed reading of section 13—209(c) is directly contrary to its plain language, as well as the policy behind this section.

The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature. In determining the legislative intent, a court should first consider the statutory language. Where the statutory language is clear, it will be given effect without resort to other aids for construction. However, where the language is ambiguous, it is appropriate to examine the legislative history. (*People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197, 607 N.E.2d 1251, 1253.) In determining legislative intent, a court may consider the reason and necessity for the law, the evils to be remedied, and the objects to be attained. In addition, a court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result. *State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 541, 605 N.E.2d 539, 542.

Here, the plain and unambiguous language of section 13—209(c) of the Code allows a plaintiff to commence a suit against a deceased's personal representative *only* if the deceased's death was unknown to

the plaintiff when the original complaint was filed. Therefore, we must give this language effect without resort to other aids of statutory construction. The legislative history of this section also supports this interpretation.

As the dissent notes, section 13—209(c) of the Code was enacted after the decision of the Supreme Court of Illinois in *Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 533 N.E.2d 885. In *Vaughn*, the plaintiffs named Speaker, a deceased person, as the defendant in their complaint filed only a few days prior to the expiration of the statute of limitations. Only after summons was returned unserved did the plaintiffs become aware of Speaker's death, and they sought to amend their complaint to substitute the representative of Speaker's estate as defendant, even though the statute of limitations had run. The supreme court declared there was no statutory authority which would allow the plaintiffs to do so:

"Plaintiffs have thus not pointed out, and we have not found, any Code provision by which the second complaint can be said to relate back to the date of the initial filing. Nor may we formulate such a rule under our inherent and statutory authority to formulate rules of procedure. [Citation.] It is true, as plaintiffs submit, that rules regarding amendments to pleadings are procedural in nature, as is a statute of limitations itself. But even though procedural in nature, a statute of limitations, if properly asserted by one entitled to its protection, is a bar to an action. It is a legislatively determined deadline for commencing an action against one who otherwise might be legally indebted to a plaintiff. This court may not, under the guise of procedural rulemaking, effectively eviscerate a valid statute of limitations." (*Vaughn*, 126 Ill. 2d at 161, 533 N.E.2d at 889-90.)

After *Vaughn*, the legislature added section 13—209(c). It appears the legislature intended to address the situation where a plaintiff, because of carelessness, is *unaware* of a proposed defendant's death and names that deceased person as the defendant in the plaintiff's complaint. If the conditions in section 13—209(c) are met, the plaintiff will be permitted to substitute the personal representative of the decedent as the defendant even though the statute of limitations has already run.

■ The situation here is unlike the situation in *Vaughn*. There, the plaintiffs were unaware of the decedent's death when they named him as the defendant in their complaint. Here, plaintiffs were aware of decedent's death when they named him as the defendant in their complaint. Thus, it appears section 13—209(c) of the Code was not intended to address the situation here. Moreover, interpreting section 13—209(c) to apply here would encourage plaintiffs who are

aware of a possible defendant's death to fabricate excuses for failing to name as a defendant the personal representative of the estate of that deceased. This would, theoretically, place no time limit on bringing a suit, because a plaintiff could at any time after the statute of limitations had run seek to add a defendant under this section. Surely this is not what the legislature intended in enacting section 13—209(c), and that is why it included the requirement a plaintiff must be *unaware* of the proposed defendant's death.

The dissent, however, would read "whose death is unknown to the party" as stated in section 13—209(c) as "whose death is unknown to the party *or the party's attorney*." In this way, the dissent proposes, the statute would further the policy behind section 13—209, which the dissent notes is to " ' "implement the legislative intent to preserve causes of action including those sounding in wrongful death against loss by reason of technical rules of pleading." ' " (278 Ill. App. 3d at 103, quoting *Hardimon v. Carle Clinic Association* (1995), 272 Ill. App. 3d 117, 121, 650 N.E.2d 281, 283, quoting *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 675, 382 N.E.2d 95, 100.) The dissent's proposed interpretation runs directly counter to the plain and unambiguous language of section 13—209(c). We can find no authority for interpreting the word "party" to mean anything other than one of the actual parties to a lawsuit:

> " 'Party' is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties." (Black's Law Dictionary 1122 (6th ed. 1990).)

Thus, a party's attorney is not a party to the lawsuit in which that party is involved. By reading "party" as used in section 13—209(c) to include the party's attorney, the dissent would have us do what our supreme court in *Vaughn* said it did not have the authority to do: rewrite the Code to allow the plaintiffs to amend their pleading after the statute of limitations had run. Regardless, as we have explained earlier, plaintiffs admit they informed their attorney of decedent's death soon after decedent's death, and plaintiffs' attorney had notice of the correct spelling of decedent's name well in advance of the end of the statute of limitations period. In short, section 13—209(c) does not support the plaintiffs' position.

Plaintiffs then assert even if the statute of limitations otherwise barred their claim, the conduct of defendant's insurance company,

Standard Mutual, has estopped defendant from asserting the statute of limitations as a defense. Equitable estoppel requires six elements. First, there must be words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts. Second, the party against whom the estoppel is alleged must have had knowledge at the time the representations were made the representations were not true. Third, the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time the representations were made and at the time they were acted on by him. Fourth, the party estopped must intend or reasonably expect his conduct or representations will be acted upon by the party asserting the estoppel. Fifth, the party claiming the benefit of the estoppel must have in good faith relied upon the misrepresentation to his detriment, and this reliance must be reasonable. Sixth, the party claiming the benefit of the estoppel must have acted so he would be prejudiced if the first party is permitted to deny the truth thereof. *Vaughn*, 126 Ill. 2d at 162-63, 533 N.E.2d at 890.

Plaintiffs assert they failed to file pleadings within the statute of limitations naming decedent's estate as a defendant because Standard Mutual led them to believe the case would be settled. Conduct by defendant's insurer can, in some instances, give rise to "an apparent intent to pay the claim" which will estop a defendant from raising the statute of limitations as a defense. (See *Vaughn*, 126 Ill. 2d at 164-65, 533 N.E.2d at 891.) Plaintiffs assert this is what occurred here. However, this contention is without merit.

Plaintiffs assert the correspondence between their attorney and Standard Mutual demonstrated defendant's intent to settle, and plaintiffs detrimentally relied on this intent by failing to file suit sooner. Contrary to plaintiffs' assertions, the language of these letters shows plaintiffs expressly informed defendant a lawsuit would be filed unless the full policy limits of $250,000 were tendered to them. Defendant expressly rejected plaintiffs' offer and instead made a counteroffer to settle for $8,500. When the defendant rejected their ultimatum, and made a grossly disparate counteroffer, plaintiffs were aware defendant intended to resist their claim unless plaintiffs greatly reduced their demand. Plaintiffs cannot now argue defendant exhibited an "apparent intent to pay the claim." (See *Vaughn*, 126 Ill. 2d at 164-65, 533 N.E.2d at 891.) No reasonable interpretation of the correspondence from defendant supports this contention. The trial court was entitled to conclude, as a matter of law, no conduct by Standard Mutual induced plaintiffs to believe their claim was going to be settled.

Plaintiffs also contend they detrimentally relied on "defendant's implied and apparent misrepresentations regarding decedent's death" because decedent's insurer never mentioned the death of decedent during negotiations. This contention is without merit. Even if Standard Mutual's conduct amounted to a misrepresentation, plaintiffs had *actual knowledge* of decedent's death in September 1992. Plaintiffs cannot now contend they relied on an alleged misrepresentation to the contrary. The trial court did not err in concluding decedent's insurer's conduct, as a matter of law, did not estop defendant from raising the statute of limitations as a defense.

The judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent.

Plaintiffs were injured in an automobile accident on April 14, 1992. The two-year personal injury statute of limitations was to expire April 14, 1994, but on March 21, 1994, plaintiffs filed their complaint against defendants Gene Somers and Marlyss Somers, misspelling their names. Unfortunately, Gene Somers had died September 26, 1992, and an administrator had been appointed for him on March 11, 1993 (replaced by a special administrator, Thomas Goodwin, on October 27, 1993). After defendants filed a motion to quash, on April 11, 1994, plaintiffs filed a motion for appointment of a special administrator on April 22, 1994, and then a motion to add Goodwin as a party on May 26, 1994.

A similar fact situation existed in *Vaughn*, where plaintiffs' complaint, filed a few days before the expiration of the statute of limitations, named Wilbur Speaker as a defendant. When summons was returned unserved, plaintiffs learned that Speaker was deceased and attempted to serve the executors of his estate. The court decided the case under section 2—616(d) of the Code. (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(d).) The court refused to simply label a suit against a deceased person as a "nullity." (*Vaughn*, 126 Ill. 2d at 157, 159-60, 533 N.E.2d at 888, 889.) The court did find, however, that there was no indication that a key requirement of section 2—616(d) of the Code had been met: that the substituted defendant received notice of the pending action prior to the lapse of the limitations period. *Vaughn*, 126 Ill. 2d at 160, 533 N.E.2d at 889.

In the present case the majority does not rely upon lack of notice,

but upon the requirement of section 2—616(d) of the Code that the "failure to join the person as a defendant was inadvertent." (735 ILCS 5/2—616(d) (West 1992).) The majority finds that the failure to name the estate in this case was something more than inadvertence (gross inadvertence?), because plaintiffs "knew," before their complaint was filed, that Gene Somers was deceased. I recognize we should not encourage slipshod work on the part of attorneys, but punishment of plaintiffs' carelessness in this case does not further the policy of section 2—616(d).

Complications may arise when defendants die before suit is filed, and the legislative policy is that plaintiffs in such cases should have additional time to bring their action. Even where plaintiffs have acted carelessly they may still have a right to bring their action. (See *Vaughn*, 126 Ill. 2d at 165-66, 533 N.E.2d at 892.) "Inadvertent" means "not turning the mind to a matter," "INATTENTIVE," "UNINTENTIONAL." (Webster's Ninth New Collegiate Dictionary 607 (1986).) A plaintiff should not be allowed to intentionally name the wrong party in an attempt to extend the time for filing or to gain some other advantage, but there is no indication of such intentional misconduct in this case.

The majority suggests that allowing the estate to be added as a defendant would "theoretically, place no time limit on bringing a suit, because a plaintiff could at any time after the statute of limitations had run seek to add a defendant." (278 Ill. App. 3d at 99.) In all these cases, however, a lawsuit is filed and service is commenced *within* the two-year period of the statute of limitations. These cases always come to a head when a motion to dismiss or quash is filed a few days after the running of the statute. If the statute could just be extended a few weeks, there would be no problem. In the absence of any intentional misconduct, it is the legislative policy that the statute be extended. The majority's approach rewards litigants who do not mention the death of a defendant until it is too late for plaintiff to do anything about it.

There is an implication in *Vaughn* that the supreme court did not consider the result appropriate and that the legislature should consider changes in the rule. (See *Vaughn*, 126 Ill. 2d at 161, 533 N.E.2d at 890 ("Nor may *we* formulate such a rule under our inherent and statutory authority to formulate rules of procedure" (emphasis added)).) The legislature apparently acted on that suggestion and added a new subsection (c) to section 13—209 of the Code. 735 ILCS 5/13—209(c) (West 1992) (added by Pub. Act 86—793, eff. January 1, 1990) (1989 Ill. Laws 4195).

Under section 13—209(c) of the Code, when a party commences

an action against a deceased person whose death is unknown, the action may be refiled against the deceased person's personal representative so long as the amended complaint is filed within two years of the expiration of the original statute of limitations. If the amended complaint is filed more than six months after the issuance of letters, the estate is liable only to the extent it is protected by liability insurance. (735 ILCS 5/13—209(c) (West 1992).) It is true that section 13—209(c) uses the words "whose death is unknown to the party" (735 ILCS 5/13—209(c) (West 1992)), but in my view those words are only descriptive of the situation where section 13—209(c) is meant to apply and are not intended to impose a rigorous substantive condition. Section 13—209(c) lists four "terms and conditions" which must be met. A party's lack of knowledge of the death is not one of those terms and conditions, although it is required that after learning of the death the party proceeds with reasonable diligence to seek leave to file an amended complaint. That was done here. The majority suggests that plaintiffs "knew" of decedent's death before the statute ran. (278 Ill. App. 3d at 95.) Actually, the most that can be said is that plaintiffs should have known of decedent's death. The undisputed evidence is that plaintiffs read the obituary, and communicated with their attorney, but when the attorney checked out the information he (mistakenly) determined it was not accurate. A person who is told something, but does not believe it, cannot be said to "know" it.

The majority opinion notes that plaintiffs "were aware of decedent's death 18 months prior to the running of the statute of limitations." (278 Ill. App. 3d at 95.) This was not a situation, however, which was made worse by the passage of time. The critical point was when plaintiffs learned of Somers' death and the attorney determined the information was not accurate. Once that occurred, it made no difference whether 18 days passed or 18 months.

*Hardimon* involved a complaint which recited that plaintiff had been duly appointed a special administrator, although no such appointment had then been made and none was made prior to the running of the statute of limitations. What the court said in that case is equally applicable here. Section 2—616(b) was adopted " 'to implement the legislative intent to preserve causes of action including those sounding in wrongful death against loss by reason of technical rules of pleading.' " *Hardimon*, 272 Ill. App. 3d at 120-21, 650 N.E.2d at 283, quoting *Redmond*, 65 Ill. App. 3d at 675, 382 N.E.2d at 100.

In *Vaughn*, there was no service on any defendant before the statute of limitations had run. In the present case, Marlyss Somers was a defendant in addition to Gene Somers, and there was service on Marlyss. Marlyss apparently also accepted the complaint which

was to be served on Gene. Marlyss Somers apparently notified the insurance company which insured Gene and herself, and the attorney who represented Marlyss also represents the estate of Gene Somers. Special administrator Goodwin, in his deposition, admitted having knowledge of this suit prior to the April 14, 1994, running of the statute of limitations. In any event, notice to the substituted defendant is not a requirement under section 13—209(c) of the Code.

Under both sections 2—616(d) and 13—209(c) of the Code, I would reverse the judgment of the trial court and remand so that the estate of Gene Somers could be added as a defendant.