FIRST DIVISION
 December 30, 1996

No. 1-95-1624

THE PEOPLES GAS LIGHT AND ) Petition for Review
COKE COMPANY AND NORTH ) of the Order of the
SHORE GAS COMPANY, ) Illinois Commerce 
 ) Commission.
 Petitioner-Appellant, )
 )
v. ) Ill.C.C. Docket #
 ) 92-0268
ILLINOIS COMMERCE COMMISSION: )
COMMONWEALTH EDISON COMPANY, )
et al., )
 )
 Respondents-Appellees. )

 JUSTICE O'BRIEN delivered the opinion of the court:
 Section 8-402 of the Public Utilities Act (220 ILCS 5/8-402
(West 1992)) requires each electric utility to file an electric
utility energy plan, designed to minimize the cost of providing
service to consumers, with the Department of Natural Resources
and the Illinois Commerce Commission (ICC) every three years. 
Such "least-cost" plans detail the supply-side and demand-side
management resource options that the electric utility intends to
use to meet its service obligations over a twenty-year period. 
Supply-side resources are "those resources that increase the
amount of electricity available for consumption in Illinois or in
the service territory of each electric utility." 83 Ill. Adm.
Code 440.100 (1996). Demand-side management resources are
designed to increase the efficiency with which customers use
electricity. See 83 Ill. Adm. Code 440.100 (1996). The ICC
holds hearings on the filed plans pursuant to rules it has
adopted that govern the least-cost planning proceedings. At the
conclusion of the hearings, the ICC issues an order adopting an
electric energy plan for the State and for each utility.
 Commonwealth Edison (ComEd) filed the least-cost plan that
is the subject of this appeal on July 1, 1992. The Peoples Gas
Light and Coke Company and North Shore Gas Company (Peoples Gas)
intervened in the proceeding, seeking that an additional demand-
side management program--a gas cooling pilot program--be included
in ComEd's least-cost plan. In support, Peoples Gas submitted
the testimony and exhibits of William F. Hederman, a consultant
with the firm that designed the gas cooling pilot program. 
Hederman outlined how the gas cooling program would switch
certain large commercial consumers of electric air conditioning
to gas-powered air conditioning systems.
 ComEd moved to strike Hederman's testimony and exhibits. 
The hearing examiner granted the motion, finding that section 8-
402 does not "[contemplate] fuel switching to natural gas" and
that the demand-side management programs "contemplated by the law
*** relate to the providing of least cost electric service, not
gas service ***." (Emphasis in original.) Peoples Gas filed a
petition for interlocutory review of the hearing examiner's
ruling. The ICC denied Peoples Gas' petition for interlocutory
review and subsequently approved ComEd's least-cost plan, which
did not include the gas cooling pilot program. Peoples Gas
appeals, arguing that the refusal to admit Hederman's testimony
and exhibits regarding the gas cooling pilot program violated
section 8-402 of the Public Utilities Act.
 The resolution of this issue requires us to construe section
8-402 of the Public Utilities Act. Because the construction of a
statute is a matter of law, we may independently construe section
8-402. See Metro Utility Co. v. Illinois Commerce Commission,
262 Ill. App. 3d 266, 273 (1994). 
 The primary rule of statutory construction is to ascertain
and give effect to the true intent of the legislature. Augustus
v. Estate of Somers, 278 Ill. App. 3d 90, 97 (1996). In
determining legislative intent, a court should consider first the
statutory language. Augustus, 278 Ill. App. 3d at 97. Where the
language of the statute is clear, it will be given effect without
resort to other aids for construction. Augustus, 278 Ill. App.
3d at 97. 
 Accordingly, we begin our analysis by examining the relevant
language of section 8-402:
 "(a) The objective of this Section shall be to ensure
 the provision of adequate, efficient, reliable and
 environmentally safe electric energy services at the
 lowest possible cost to all Illinois electric energy
 consumers and users, and, in doing so, to utilize, to
 the fullest extent practicable, all economical means of
 conservation, nonconventional technologies relying on
 renewable energy resources, cogeneration and
 improvements in electric energy efficiency as the
 initial sources of new energy supply.
 * * *
 (d) In preparing the [least-cost plans] each
 electric utility shall include the following:
 * * *
 (iii) a demonstration that the proposed plan
 represents the least-cost means of satisfying
 electric energy service needs consistent with the
 objectives of this Act ***." 220 ILCS 5/8-402
 (West 1992).
 The plain and unambiguous language of section 8-402
indicates that it was the legislature's intent to reduce the cost
of providing electric service to consumers. However, Peoples
Gas' gas-cooling pilot program goes beyond reducing the cost of
electric service; Peoples Gas seeks to eliminate electric service
to certain large commercial customers by switching them to gas
service. There is no stated intent in section 8-402 that the
least-cost proceedings are meant to promote such fuel switching. 
 Peoples Gas argues that its gas-cooling pilot program should
be viewed as conservation, one of the goals of section 8-402. We
disagree. "Conservation", as that term is used in section 8-
402, means "reductions in the use of electricity through
improvements in end-use efficiency and/or changes in consumer
behavior." See 83 Ill. Adm. Code 440.100 (1996). However, as
discussed above, Peoples Gas' gas cooling pilot program would not
simply reduce the use of electricity for certain large commercial
consumers. Instead, Peoples Gas would entirely eliminate those
consumers' use of electricity by switching them to gas. Such
fuel switching does not meet the definition of "conservation". 
 Peoples Gas also claims that its gas cooling pilot program
constitutes cogeneration, another goal of section 8-402. 
However, nothing in Hederman's testimony indicated that the gas
cooling pilot program is cogenerating electricity, the only
utility service subject to least-cost planning under section 8-
402.
 Peoples Gas further contends that its gas-cooling pilot
program would provide "an improvement in efficiency." However,
section 8-402 envisions "improvements in electric energy
efficiency as [an] initial [source] of new energy supply." 220
ILCS 5/8-402(a) (West 1992). Peoples Gas' proposal does not
improve electric energy efficiency as an initial source of new
energy supply; instead, it would eliminate electricity as an
initial source of energy supply.
 Finally, Peoples Gas argues that the rules adopted by the
ICC for the least cost planning proceeding do not preclude the
use of the gas cooling pilot program as part of an electric
utility's least-cost plan. While that may be true, nothing in
the rules requires the ICC to consider such a fuel-switching
program. Thus, we cannot say it was error for the hearing
examiner to strike Hederman's testimony and exhibits regarding
the gas cooling program, and for the ICC to approve ComEd's
least-cost plan without consideration of that testimony. 
 Affirmed. 
 HOFFMAN, P.J. and CAHILL, J., concur.