THE CITY OF CHICAGO, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—95—1617

Opinion filed February 3, 1997.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Anne K. Berleman, Assistant Corporation Counsel, of counsel), for appellant.

Pamela B. Strobel and Thomas Russell, both of Commonwealth Edison Company, and Kevin M. Forde, Ltd. (Kevin M. Forde, of counsel), and Sidley & Austin (Sarah J. Read and J. Tyson Covey, of counsel), all of Chicago, for appellees.

Citizens Utility Board, of Chicago (Susan L. Satter, of counsel), for *amicus curiae.*

JUSTICE O'BRIEN delivered the opinion of the court:

This is a companion case to *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n,* 286 Ill. App. 3d 21 (1996). Our opening paragraph in *Peoples Gas* also applies here, so we quote that paragraph in its entirety.

■ "Section 8—402 of the Public Utilities Act (220 ILCS 5/8—402 (West 1992)) requires each electric utility to file an electric utility energy plan, designed to minimize the cost of providing service to consumers, with the Department of Natural Resources and the Illinois Commerce Commission (ICC) every three years. Such 'least-cost' plans detail the supply-side and demand-side management resource options that the electric utility intends to use to meet its service obligations over a 20-year period. Supply-side resources are 'those resources that increase the amount of electricity available for consumption in Illinois or in the service territory of each electric utility.' 83 Ill. Adm. Code § 440.100 (1996). Demand-side management resources are designed to increase the efficiency with which customers use electricity. See 83 Ill. Adm. Code § 440.100 (1996). The ICC holds hearings on the filed plans pursuant to rules it has adopted that govern the least-cost planning proceedings. At the conclusion of the hearings, the ICC issues an order adopting an electric energy plan for the state and for each utility." *Peoples Gas,* 286 Ill. App. 3d at 22-23.

On July 1, 1992, Commonwealth Edison (hereinafter ComEd) filed the least-cost plan that is the subject of this appeal. In that plan, ComEd proposed to implement or continue implementing 16 demand-side management pilot programs. On November 18, 1994, the hearing examiner recommended ComEd institute or continue implementation of 15 of the 16 pilot programs it had proposed, as

well as one program proposed by the City of Chicago (hereinafter the City).

Meanwhile, in a separate proceeding before the ICC, ComEd requested a $460.3 million increase in its base rates for electrical service. ComEd's proposed rate increase included an estimated $23 million for the recovery of the costs of the 16 demand-side management (hereinafter DSM) pilot programs. The City argued that the $23 million for the DSM pilot programs should be reduced to $6 million because ComEd's actual DSM expenditures historically had been lower than its DSM budgets. On January 9, 1995, the ICC entered an order in the rate case granting ComEd $303.2 million of the $460.3 million rate increase it had requested. The ICC allowed ComEd $6 million for the 16 DSM pilot programs, finding that "[f]or the past three years, [ComEd] has spent only 62.8% of the amount of DSM expenses budgeted. *** Given the recurring and substantial discrepancy between [ComEd's] actual DSM expenses and [ComEd's] budgeted levels, the [ICC] concludes that a determination of *** DSM expenses based on [ComEd's] [$23 million] estimates would be inappropriate."

On January 11, 1995, the hearing examiner filed an amended proposed order recommending that in order to remain within the reduced DSM budget, ComEd should be required to implement only 4 of the 16 DSM pilot programs originally approved by the hearing examiner in his November 18, 1994, order. On February 23, 1995, the ICC approved ComEd's implementation of only 7 of the 16 DSM pilot programs initially approved by the hearing examiner. The City appeals from the February 23, 1995, order. The Citizens Utility Board (hereinafter CUB) filed an *amicus curiae* brief in support of the City's appeal.

On appeal, the City argues the ICC erred in reducing ComEd's DSM pilot programs in order to conform with the reduction in ComEd's DSM cost recovery. The City contends the Public Utilities Act does not list cost recovery as a factor for the ICC to consider in evaluating an electric utility's proposed least-cost plan.

The resolution of this issue requires us to construe the Public Utilities Act (hereinafter the Act). Because the construction of a statute is a matter of law, we may independently construe the Act. See *Metro Utility Co. v. Illinois Commerce Comm'n*, 262 Ill. App. 3d 266, 273 (1994).

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Augustus v. Estate of Somers*, 278 Ill. App. 3d 90, 97 (1996). In determining legislative intent, a court should first consider the statutory language. *Augustus*, 278 Ill.

560

App. 3d at 97. Where the language of the statute is clear, it will be given effect without resort to other aids for construction. *Augustus*, 278 Ill. App. 3d at 97.

■ We find that the clear language of section 1—102 of the Act contemplates cost recovery as a factor for the ICC to consider when evaluating an electric utility's proposed least-cost plan. Section 1—102 states:

> "The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of adequate, efficient, reliable, environmentally safe and least-cost public utility services at prices which accurately reflect the long-term cost of such services and which are equitable to all citizens. It is therefore declared to be the policy of the State that public utilities shall continue to be regulated effectively and comprehensively. It is further declared that the goals and objectives of such regulation shall be to ensure
>
> \* \* \*
>
> (d) Equity: the fair treatment of consumers and investors in order that
>
> \* \* \*
>
> (vi) *regulation does not result in undue or sustained adverse impact on utility earnings.*" (Emphasis added.) 220 ILCS 5/1—102(d)(vi) (West 1992).

Further, section 8—402(d) of the Act allows the ICC to adopt a rule governing the least-cost proceedings. That rule states that the ICC must consider whether a proposed least-cost plan "is equitable to both consumers and stockholders" and whether "[t]he utility is capable of financing all investments contemplated in the plan without impairing its financial integrity and soundness." 83 Ill. Adm. Code §§ 440.810(b)(4), (b)(6) (1996). Thus, the least-cost planning rule expressly requires the ICC to consider the utility's cost recovery when approving a least-cost plan.

■ The City argues, though, that in *A. Finkl & Sons Co. v. Illinois Commerce Comm'n*, 250 Ill. App. 3d 317 (1993), we held the ICC must approve DSM programs without regard to whether the utility will recover the programs' costs during the period in which the plan is implemented. The City misinterprets *A. Finkl*, in which we actually held that an electric utility *is* entitled to recover operating costs (*A. Finkl*, 250 Ill. App. 3d at 324), but regardless of whatever cost-recovery mechanism is approved, the utility is obligated by law to pursue DSM programs. *A. Finkl*, 250 Ill. App. 3d at 333.

■ The City further argues ComEd has received a "windfall" by not spending prior DSM funds and that ComEd could use those funds to pay for the remaining DSM pilot programs. The City does not cite

to any portion of the extensive record in this case supporting the assertion that ComEd actually has extra funds to spend on more DSM programs. Further, the City does not adequately respond to ComEd's argument that "its DSM expenses [were never] included in ComEd's base rates, *** [and, therefore], rather than receiving a 'windfall', ComEd has actually under-recovered its DSM expenses." Accordingly, we find the City has waived this issue.

■ The City also argues if ComEd needed more funds to implement the remaining DSM programs, it could sometime in the future file a new rate case or seek recovery of costs through the use of a rider. However, when it evaluated ComEd's least-cost plan, the ICC did not know whether or not ComEd would file a new rate case or seek a rider. Thus, the only information the ICC had regarding ComEd's cost recovery for the proposed DSM pilot programs was that the ICC had previously awarded ComEd $6 million for those programs. The ICC properly considered that information when adopting the least-cost plan for ComEd.

■ Finally, the City and CUB contend that the ICC's February 25 order is "perverse" for it excuses ComEd from additional DSM pilot programs due to the reduction in its cost recovery, which, in turn, was ordered because ComEd had not implemented enough DSM programs in the past. However, whether or not ComEd misused DSM funds in the past simply has no relevance to the sole issue on appeal in this case: whether the ICC can consider cost recovery when evaluating an electric utility's least-cost plan. As discussed above, the ICC *can* consider an electric utility's cost recovery when determining the merits of a least-cost plan.

For the foregoing reasons, we affirm the ICC.

Affirmed.

HOFFMAN and CAHILL, JJ., concur.