PALOS COMMUNITY HOSPITAL *et al.*, Plaintiffs-Appellants, v. ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—01—2199

Opinion filed March 8, 2002.

Mayer Brown & Platt (Tyrone C. Fahner, Diane J. Romza-Kutz, Bettina Getz, and Thomas A. Lidbury, of counsel), Ungaretti & Harris (J. Timothy Eaton and Theodore Harman, of counsel), and Rooks Pitts & Poust, all of Chicago (Terrence M. Burns and Marc A. Primack, of counsel), for appellants.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:
We consider whether the Illinois Health Facilities Planning Act

(Act) (20 ILCS 3960/1 *et seq.* (West 2000)) requires plaintiffs to obtain a permit from the Illinois Health Facilities Planning Board (Board) before constructing a free-standing health and fitness center (center). We believe not and reverse the circuit court.

Palos Community Hospital (Hospital) filed an application for a permit pursuant to the Act to construct a free-standing health and fitness center on a parcel of land separate from the Hospital. The Board issued an initial denial of the Hospital's application, and the Hospital timely requested an administrative hearing. While its application was still pending before the Board, the Hospital restructured its corporate form and created a new parent corporation, the St. George Corporation, and a new wholly owned subsidiary of the parent corporation, the St. George Wellness Center. The St. George Wellness Center began construction of a center on the parcel of land without waiting for the Board's final decision on the permit application.

The Board then began a formal investigation into whether the construction of the center violated the permit requirement in the Act. The Board issued a subpoena *duces tecum* to the Hospital, St. George Corporation, and the St. George Wellness Center (collectively referred to as plaintiffs) for information and documents relating to the construction and financing of the center.

Plaintiffs then filed a six-count complaint in the circuit court against the Board. Count I sought a declaratory judgment that the plaintiffs were not required to comply with the Act's permit requirement. Count II sought a declaratory judgment that the Board has no authority to regulate or investigate the St. George Wellness Center or the St. George Corporation. Count III sought a declaratory judgment that the Board lacked the discretion to deny plaintiffs' application for a permit for the construction of the center. Count IV sought a declaratory judgment that the Board had violated the Hospital's rights to due process and equal protection. Count V sought a declaration that the Board's function violates due process. Count VI sought a declaration that the Board's denial of the permit application was arbitrary and capricious and against the manifest weight of the evidence.

The Board filed a complaint to temporarily restrain and enjoin plaintiffs from constructing the center until a valid permit was issued by the Board. The trial court consolidated the Board's complaint with the plaintiffs' declaratory judgment action and denied the Board's motion for a temporary restraining order. The Board then voluntarily dismissed its complaint.

Plaintiffs moved for summary judgment on count I of their declaratory judgment action and sought to quash the subpoena *duces tecum*; the Board moved to dismiss plaintiffs' complaint pursuant to sections

2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2000)). The trial court denied plaintiffs' summary judgment motion and their motion to quash the subpoena *duces tecum*, granted the Board's motion to dismiss pursuant to section 2—619, and directed plaintiffs to comply with the subpoena. Plaintiffs filed this timely appeal. The Illinois Hospital & Health Systems Association filed an *amicus curiae* brief in support of plaintiffs' appeal.

■ On appeal, plaintiffs argue that the trial court erred in granting the Board's section 2—619 motion to dismiss and in denying plaintiffs' motion for partial summary judgment. Although the denial of a motion for summary judgment is not ordinarily appealable, such a denial is reviewable where, as here, the case is on appeal from a motion to dismiss which has been granted, there has been no evidentiary hearing or trial, and the party seeking such review has not prevented or avoided hearing or trial. *Rose v. Pucinski*, 321 Ill. App. 3d 92, 96 (2001). In reviewing the circuit court's grant of the Board's section 2—619 motion to dismiss and the denial of plaintiffs' motion for partial summary judgment, the relevant issues on appeal are the same: (1) whether a genuine issue of material fact exists; and (2) whether the movant was entitled to a judgment as a matter of law. *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391, 397 (2001). The standard of review is *de novo. Guzman*, 196 Ill. 2d at 397; *100 W. Monroe Partnership v. Carlson*, 319 Ill. App. 3d 761, 766 (2001).

There are no genuine issues of material fact here. The issue is one of law: whether the Act requires plaintiffs to obtain a permit from the Board prior to constructing the center.

■ The resolution of this issue requires us to construe the Act. Because the construction of a statute is a question of law, the Board's construction of the Act is not binding and we may independently construe the Act. *Metro Utility Co. v. Illinois Commerce Comm'n*, 262 Ill. App. 3d 266, 273 (1994).

■ The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Augustus v. Estate of Somers*, 278 Ill. App. 3d 90, 97 (1996). In determining legislative intent, a court should consider the statutory language first. *Augustus*, 278 Ill. App. 3d at 97. Where the language of the statute is clear, it will be given effect without resort to other aids for construction. *Augustus*, 278 Ill. App. 3d at 97. If the words used in a statute are ambiguous or if the meaning is unclear, the court may consider the legislative history as an aid to construction. *Armstrong v. Hedlund Corp.*, 316 Ill. App. 3d 1097, 1106 (2000).

First, when is a permit necessary?

■ Section 5 of the Act plainly and unambiguously provides that a permit is necessary only for construction of a "health care facility":

"After effective dates set by the State Board, no person shall construct, modify or establish a *health care facility* \*\*\* without first obtaining a permit or exemption from the State Board. \*\*\* \*\*\*

A permit or exemption shall be obtained prior to the acquisition of major medical equipment or to the construction or modification of a *health care facility* which:

(a) requires a total capital expenditure in excess of the capital expenditure minimum; or

(b) substantially changes the scope or changes the functional operation of the facility; or

(c) changes the bed capacity of a health care facility \*\*\*." (Emphasis added.) 20 ILCS 3960/5 (West 2000).

Next, what is a "health care facility"?

Although the Board admits in its brief and at oral argument that the center is not a "health care facility," the Act itself is dispositive.

Section 3 of the Act defines "[h]ealth care facilities" as:

"1. An ambulatory surgical treatment center required to be licensed pursuant to the Ambulatory Surgical Treatment Center Act;

2. An institution, place, building, or agency required to be licensed pursuant to the Hospital Licensing Act;

3. Skilled and intermediate long term care facilities licensed under the Nursing Home Care Act;
\*\*\*

4. Hospitals, nursing homes, ambulatory surgical treatment centers, or kidney disease treatment centers maintained by the State or any department or agency thereof;

5. Kidney disease treatment centers, including a free-standing hemodialysis unit; and

6. An institution, place, building, or room used for the performance of outpatient surgical procedures that is leased, owned, or operated by or on behalf of an out-of-state facility." 20 ILCS 3960/3 (West 2000).

■ Plaintiffs' center is not within the definition of a "health care facility" in section 3 of the Act (20 ILCS 3960/3 (West 2000)) and therefore no permit was necessary prior to its construction.

■ This does not end the conversation for the Board. The Board argues that a permit is necessary when construction or modification is made "by or on behalf of" a health care facility and that the plaintiffs may be constructing the center "by or on behalf of" a health care facility. The Board cites section 3 of the Act, which defines "construction or modification," in relevant part, as:

"[A]ny capital expenditure made *by or on behalf of* a health care fa-

cility which exceeds the capital expenditure minimum." (Emphasis added.) 20 ILCS 3960/3 (West 2000).

The Board also cites section 3's definition of "capital expenditure":

"[A]n expenditure *** made *by or on behalf of* a health care facility." (Emphasis added.) 20 ILCS 3960/3 (West 2000).

The Board argues that it should be allowed to continue its investigation to determine whether the center is being constructed "by or on behalf of" a health care facility.

We disagree. A statute must be interpreted as a whole, with each provision construed in connection with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Here, section 3 must be read in conjunction with section 5, which provides that a permit is only required prior to the construction or modification "of a health care facility." 20 ILCS 3960/5 (West 2000). Read together, section 3 and section 5 provide that a permit is required when two conditions are met: (1) construction or modification is made by or on behalf of a health care facility; and (2) the construction or modification is of a health care facility. Since the construction here was not of a health care facility, no permit was required.

■ The Board next argues that a permit was required pursuant to the following language in section 5:

"A permit or exemption shall be obtained prior to *** the construction or modification of a health care facility which:

***

(b) substantially changes the scope or changes the functional operation of the facility." 20 ILCS 3960/5 (West 2000).

The Board argues that the phrase "substantially changes the scope or changes the functional operation of the facility" (20 ILCS 3960/5 (West 2000)) is a term of art which the Board has defined in its rules as follows:

"[T]he acquisition, construction, or leasing of space, buildings, or structures for the purpose of providing outpatient surgical services on a site or location that is not within the licensed premises of the health care facility. Outpatient surgical services are those surgical procedures that are routinely performed in such settings as a hospital or ambulatory surgical treatment center, or in any room or area that is designed, equipped, and used for surgery, such as, but not limited to, a surgical suite or special procedures room. Outpatient surgical services do not include those procedures performed as part of a physician's private practice in examination or non-surgical treatment rooms." 77 Ill. Adm. Code § 1130.140 (2000).

The Board argues that "[t]he rule plainly shows an intent on the

part of the Board to regulate off-site surgical services not within the footprint of a health care facility's licensed premises."

The Board's argument is not well-taken with these facts. The center at issue here does not provide "off-site surgical services" and thus is not within the scope of the Board's rule or within the section 5 permit requirement.

■ Finally, the Board argues that a permit was required pursuant to Public Act 91—782 (Pub. Act 91—782, eff. June 9, 2000 (now codified at 20 ILCS 3960/3, 5 (West 2000))), which amended the Act by exempting certain "non-clinical" service areas such as chapels, gift shops, and parking lots from the Act's permit requirement. Public Act 91—782 specifically provides that " 'non-clinical service area' does not include health and fitness centers." Pub. Act 91—782, eff. June 9, 2000 (now codified at 20 ILCS 3960/3 (West 2000)).

The Board argues that by specifically *excepting* health and fitness centers from the list of exempt nonclinical service areas, the legislature demonstrated its intent to subject all health and fitness centers (including free-standing health and fitness centers such as the one at issue here) to the Act's permit requirement. We disagree. Under section 5 as amended by Public Act 91—782, a permit is still only required for "construction or modification of a *health care facility.*" (Emphasis added.) 20 ILCS 3960/5 (West 2000). No language within Public Act 91—782 amends section 3's definition of "health care facilities" to include plaintiffs' free-standing health and fitness center. Accordingly, no permit was required.

■ We hold that free-standing health and fitness centers are not subject to the permit requirement set forth in the Act. Therefore, we reverse the trial court's order dismissing count I of plaintiffs' complaint (which had sought a declaratory judgment that plaintiffs' center was not subject to the Act's permit requirement), and we reverse the trial court's order denying plaintiffs' motion for partial summary judgment. We enter summary judgment in favor of plaintiffs on count I of their complaint.

Because plaintiffs' center is not subject to the Act's permit requirement, no cause exists for the Board to investigate. Accordingly, we reverse the trial court's order denying plaintiffs' motion to quash the subpoena *duces tecum.*

Because of this disposition on count I of the complaint, the remaining counts, which sought the same relief, need not be addressed.

For the foregoing reasons, we reverse the circuit court.

Reversed.

GALLAGHER, P.J., and O'MARA FROSSARD, J., concur.