PEOPLES GAS LIGHT AND COKE COMPANY *et al.*, Petitioners-Appellants, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—95—1624

Opinion filed December 30, 1996.

Peoples Gas Light & Coke Company, of Chicago (James Hinchliff, Gerard T. Fox, and Steven S. List, of counsel), for petitioners.

James E. Ryan, Attorney General, (James E. Weging, Assistant Attorney General, of counsel), of Chicago, for respondent Illinois Commerce Commission.

Commonwealth Edison Company (Pamela B. Strobel and Thomas Russell, of counsel), Kevin M. Forde, Ltd., (Kevin M. Forde, of counsel), and Sidley & Austin (Sarah J. Read and J. Tyson Covey, of counsel), all of Chicago, for respondent Commmonwealth Edison Company.

JUSTICE O'BRIEN delivered the opinion of the court:

Section 8—402 of the Public Utilities Act (220 ILCS 5/8—402 (West 1992)) requires each electric utility to file an electric utility energy plan, designed to minimize the cost of providing service to consumers, with the Department of Natural Resources and the Illinois Commerce Commission (ICC) every three years. Such "least-cost" plans detail the supply-side and demand-side management resource options that the electric utility intends to use to meet its service obligations over a 20-year period. Supply-side resources are "those resources that increase the amount of electricity available for consumption in Illinois or in the service territory of each electric utility." 83 Ill. Adm. Code § 440.100 (1996). Demand-side management resources are designed to increase the efficiency with which customers use electricity. See 83 Ill. Adm. Code § 440.100 (1996). The

ICC holds hearings on the filed plans pursuant to rules it has adopted that govern the least-cost planning proceedings. At the conclusion of the hearings, the ICC issues an order adopting an electric energy plan for the state and for each utility.

Commonwealth Edison (ComEd) filed the least-cost plan that is the subject of this appeal on July 1, 1992. The Peoples Gas Light and Coke Company and North Shore Gas Company (Peoples Gas) intervened in the proceeding, seeking that an additional demand-side management program—a gas cooling pilot program—be included in ComEd's least-cost plan. In support, Peoples Gas submitted the testimony and exhibits of William F. Hederman, a consultant with the firm that designed the gas cooling pilot program. Hederman outlined how the gas cooling program would switch certain large commercial consumers of electric air conditioning to gas-powered air conditioning systems.

ComEd moved to strike Hederman's testimony and exhibits. The hearing examiner granted the motion, finding that section 8—402 does not "[contemplate] fuel switching to natural gas" and that the demand-side management programs "contemplated by the law *** relate to the providing of least cost *electric* service, not gas service." (Emphasis in original.) Peoples Gas filed a petition for interlocutory review of the hearing examiner's ruling. The ICC denied Peoples Gas' petition for interlocutory review and subsequently approved ComEd's least-cost plan, which did not include the gas cooling pilot program. Peoples Gas appeals, arguing that the refusal to admit Hederman's testimony and exhibits regarding the gas cooling pilot program violated section 8—402 of the Public Utilities Act.

The resolution of this issue requires us to construe section 8—402 of the Public Utilities Act. Because the construction of a statute is a matter of law, we may independently construe section 8—402. See *Metro Utility Co. v. Illinois Commerce Comm'n*, 262 Ill. App. 3d 266, 273 (1994).

The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Augustus v. Estate of Somers*, 278 Ill. App. 3d 90, 97 (1996). In determining legislative intent, a court should consider first the statutory language. *Augustus*, 278 Ill. App. 3d at 97. Where the language of the statute is clear, it will be given effect without resort to other aids for construction. *Augustus*, 278 Ill. App. 3d at 97.

■ Accordingly, we begin our analysis by examining the relevant language of section 8—402:

"(a) The objective of this Section shall be to ensure the provision of adequate, efficient, reliable and environmentally safe electric

energy services at the lowest possible cost to all Illinois electric energy consumers and users, and, in doing so, to utilize, to the fullest extent practicable, all economical means of conservation, nonconventional technologies relying on renewable energy resources, cogeneration and improvements in electric energy efficiency as the initial sources of new energy supply.

\* \* \*

(d) In preparing the [least-cost plans] each [electric] utility shall include the following:

\* \* \*

(iii) a demonstration that the proposed plan represents the least-cost means of satisfying electric energy service needs consistent with the objectives of this Act \*\*\*." 220 ILCS 5/8—402 (West 1992).

■ The plain and unambiguous language of section 8—402 indicates that it was the legislature's intent to reduce the cost of providing electric service to consumers. However, Peoples Gas' gas cooling pilot program goes beyond reducing the cost of electric service; Peoples Gas seeks to eliminate electric service to certain large commercial customers by switching them to gas service. There is no stated intent in section 8—402 that the least-cost proceedings are meant to promote such fuel switching.

Peoples Gas argues that its gas cooling pilot program should be viewed as conservation, one of the goals of section 8—402. We disagree. "Conservation," as that term is used in section 8—402, means "reductions in the use of electricity through improvements in end-use efficiency and/or changes in consumer behavior." See 83 Ill. Adm. Code § 440.100 (1996). However, as discussed above, Peoples Gas' gas cooling pilot program would not simply reduce the use of electricity for certain large commercial consumers. Instead, Peoples Gas would entirely eliminate those consumers' use of electricity by switching them to gas. Such fuel switching does not meet the definition of "conservation."

Peoples Gas also claims that its gas cooling pilot program constitutes cogeneration, another goal of section 8—402. However, nothing in Hederman's testimony indicated that the gas cooling pilot program is cogenerating electricity, the only utility service subject to least-cost planning under section 8—402.

Peoples Gas further contends that its gas cooling pilot program would provide "an improvement in efficiency." However, section 8—402 envisions "improvements in [electric] energy efficiency as [an] initial [source] of new energy supply." 220 ILCS 5/8—402(a) (West 1992). Peoples Gas' proposal does not improve electric energy effi-

ciency as an initial source of new energy supply; instead, it would eliminate electricity as an initial source of energy supply.

Finally, Peoples Gas argues that the rules adopted by the ICC for the least-cost planning proceeding do not preclude the use of the gas cooling pilot program as part of an electric utility's least-cost plan. While that may be true, nothing in the rules *requires* the ICC to consider such a fuel-switching program. Thus, we cannot say it was error for the hearing examiner to strike Hederman's testimony and exhibits regarding the gas cooling program, and for the ICC to approve ComEd's least-cost plan without consideration of that testimony.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.