FIRST DIVISION

August 18, 1997

No. 1-96-1688

IN RE THE ESTATE OF DAWN CALHOUN,

(Chicato Trust Company, as Guardian

of the Estate of Dawn Calhoun,

Petitioner-Appellant,

v.

THE ILLINOIS DEPARTMENT OF PUBLIC AID,

Respondent-Appellee.)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Benjamin Novoselsky,

Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

We consider whether an Illinois Department of Public Aid (IDPA) lien on the proceeds of a personal injury settlement must be paid before those funds may be transferred to a supplemental needs trust, which is designed to provide for a disabled individual's special needs without duplicating Medicaid services or destroying Medicaid eligibility.  We conclude that the IDPA is first entitled to payment of the lien from the proceeds of the personal injury settlement, leaving the remainder available for transfer to the trust.  

Dawn Calhoun, a minor, suffered brain damage during and shortly after birth.  Dawn's parents brought suit on her behalf against a hospital and certain physicians.  The case settled for $3,500,000.  After reduction of attorney fees and costs, Dawn's net proceeds amounted to $2,670,584.37.  Pursuant to a court order from the law division, the settlement proceeds were to be distributed as determined by the probate division.

Dawn had received $223,223.12 in Medicaid benefits from the IDPA from the date of her injury to the date of the settlement.  Neither party disputed the validity of the IDPA lien in the amount of $223,223.12, but a dispute arose over the timing of the payment of the lien.  The law division judge ordered that the amount of the lien be segregated in an escrow account pending resolution of the payment issue in the probate court.

The Chicago Trust Company, the appointed guardian of Dawn Calhoun's estate, filed a petition to establish a supplemental needs trust for the benefit of Dawn.  The guardian filed the petition because funds placed in a supplemental needs trust (sometimes referred to herein as a discretionary trust) are not considered resources available to a Medicaid recipient for the purpose of assessing the recipient's eligibility for benefits (see 42 U.S.C. §1396p(d)(4)(A) (1994)); in other words, the creation of such a trust would enable Dawn to keep her Medicaid benefits.  The guardian also requested the deferral of payment of the IDPA lien until Dawn's death.  The probate court authorized the creation of the trust and permitted its funding with all assets other than the segregated funds.  The court ordered briefs on the timing of the payment of the IDPA lien.  After a hearing on April 12, 1996, the probate court ordered the guardian to pay the lien within 30 days.  The guardian appealed, and the probate court stayed enforcement of the judgment pending resolution of the appeal.

The guardian concedes that section 120.347(d)(1) of the Administrative Code (89 Ill. Adm. Code §120.347(d)(1)(1996)) requires it to immediately pay the IDPA lien.  However, the guardian argues that section 120.347(d)(1)(89 Ill. Adm. Code §120.347(d)(1)(1996)), conflicts with section 15.1 of the Trusts and Trustees Act (760 ILCS 5/15.1 (West 1996), which the guardian contends allows it to defer payment of the IDPA lien until Dawn's death.  

The resolution of this issue requires us to construe section 15.1 of the Trust and Trustees Act.  Because the construction of a statute is a matter of law, we may independently construe section 15.1.  See 
Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n
, 286 Ill. App. 3d 21, 23 (1996).   

The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature.  
Peoples Gas
, 286 Ill. App. 3d at 23.  In determining legislative intent, a court first considers the statutory language.  
Peoples Gas
, 286 Ill. App. 3d at 23.  Where the language of the statute is clear, it will be given effect without resort to other aids for construction.  
Peoples Gas
, 286 Ill. App. 3d at 23.

Accordingly, we begin our analysis by examining the relevant language of section 15.1: 

"A discretionary trust for the benefit of an individual who has a disability that substantially impairs the individual's ability to provide for his or her own care or custody and constitutes a substantial handicap shall not be liable to pay or reimburse the State or any public agency for financial aid or services to the individual except to the extent the trust was created by the individual or trust property has been distributed directly to or is otherwise under the control of the individual, provided that such exception shall not apply to a trust created with the disabled individual's own property or property within his or her control if the trust complies with Medicaid reimbursement requirements of federal law.  Notwithstanding any other provisions to the contrary, a trust created with the disabled individual's own property or property within his or her control shall be liable, after reimbursement of Medicaid expenditures, to the State for reimbursement of any other service charges outstanding at the death of the disabled individual."  760 ILCS 5/15.1 (West 1996).

The above-quoted language of section 15.1 indicates a legislative intent that a discretionary trust created with a disabled individual's property or property within her control must comply with "Medicaid reimbursement requirements of federal law."  760 ILCS 5/15.1 (West 1996).

Under federal law, if Medicaid benefits have been made under a state plan to an individual because of an injury where a third party is liable, the state is required to seek as much reimbursement as possible from that third party, 
i.e.
, to the extent of the third party's liability.  42 U.S.C. §1396a(a)(25)(B) (1994). To that end, the Medicaid recipient must assign to the state any rights she has to seek payment for her medical care from the third party.  42 U.S.C. §1396k(a)(1)(A) (1994).  When a recovery is made, the state retains that portion of any amount collected as necessary to reimburse it for the medical payments made to the injured person, "and the remainder of such amount collected [is] paid to such individual."  42 U.S.C §1396k(b) (1996).

These federal provisions indicate that the state has priority in recouping funds from third parties liable for the Medicaid recipient's medical expenses, and only the remainder of those funds are available to the Medicaid recipient for placement in a trust. 
Accordingly, the guardian of Dawn Calhoun's estate must pay the IDPA $223,223.12 from the proceeds of the personal injury settlement.  The $223,223.12 equals the amount of Medicaid benefits provided to Dawn from the date of her injury to the date of settlement.  The remainder of the settlement fund is available to Dawn for placement in a trust.

The guardian argues that such a construction of section 15.1 violates equal protection, because disabled persons whose settlements or judgments do not exceed their medical lien would have no funds to place in trust after IDPA is paid, whereas disabled individuals whose settlements do exceed their medical lien would have funds remaining to place in trust.  We disagree.  The heart of the equal protection guarantee is that persons similarly situated are treated similarly.  
Jacobson v. Department of Public Aid
, 171 Ill. 2d. 314, 322 (1996).   Here, 
all
 disabled persons seeking the benefits of section 15.1 trusts consisting of their property or property within their control must comply with Medicaid reimbursement requirements of federal law.  Accordingly, all similarly situated persons are treated similarly, and no constitutional violation exists.

In re Estate of Hickey
, 263 Ill. App. 3d 658 (1994), cited by the guardian, is inapposite, as it involved the construction of an earlier version of section 15.1 that did not contain the language requiring the trust to comply with Medicaid reimbursement requirements of federal law.  

For the foregoing reasons, we affirm the trial court.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.